583 F.2d 1208
 1978-2 Trade Cases 62,168
 Gordon BAUGHMAN, Appellant in No. 77-1735, Cross-Appellee in
No. 77-1736,
v.
WILSON FREIGHT FORWARDING COMPANY, a/k/a Wilson Freight Co.,
Appellee in No. 77-1735, Cross-Appellant in No. 77-1736.
 Nos. 77-1735, 77-1736.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 17, 1978.
Decided July 18, 1978.
 
 John W. McIlvaine, Uniontown, Pa., for appellant in No. 77-1735, and for cross-appellee in No. 77-1736.
 George P. Williams III, Deena Jo Schneider, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Richard L. Rosenzweig, Rosenzweig & Rosenzweig, Pittsburgh, Pa., for appellee in No. 77-1735, and for cross-appellant in No. 77-1736.
 Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Plaintiff Gordon Baughman ("plaintiff") appeals from an order of the district court assessing attorneys' fees and costs against defendant Wilson Freight Forwarding Company, now known as Wilson Freight Lines, Inc. ("Wilson"). Wilson cross-appeals from the same order, which the district court entered after a jury verdict finding that Wilson had violated the antitrust laws. The district court assessed the attorneys' fees and costs in accordance with Section 4 of the Clayton Act, which provides in pertinent part that "(a)ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover . . . the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15 (1976).
 
 I.
 
 2
 The factual background of this case is set forth fully in the prior opinions of both our court and the district court that considered questions of liability and damages. Baughman v. Cooper-Jarrett, Inc., 391 F.Supp. 671 (W.D.Pa.1975), Vacated in part and remanded, 530 F.2d 529 (3d Cir.), Cert. denied, 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976). We therefore shall set out only those facts relevant to this appeal before proceeding to consider that petition for attorneys' fees.
 
 A.
 FACTUAL BACKGROUND
 
 3
 Plaintiff worked for Cooper-Jarrett, Inc., as an over-the-road truck driver. In October, 1970, Cooper-Jarrett fired plaintiff after he had been involved in several work-related disputes with management. Following a grievance proceeding that upheld the propriety of the discharge, plaintiff applied for work with several other trucking firms in western Pennsylvania. He was unsuccessful in obtaining employment as a trucker.
 
 
 4
 Plaintiff believed that his failure to find work was the result of a conspiracy to blacklist him by the trucking firms to which he had applied, a conspiracy instigated by Cooper-Jarrett. Consequently, plaintiff sought legal assistance, but for several months could not find an attorney willing to represent him. Finally, after repeated requests, attorney Paul A. Simmons, a member of a Washington County, Pennsylvania, law firm, agreed in February of 1972 to take plaintiff's case.
 
 
 5
 Plaintiff filed his complaint in federal district court on June 12, 1972, against four defendants: Cooper-Jarrett, Inc.; Matlack, Inc.; National Freight Lines, Inc.; and Brauns Baking Company, also known as Continental Baking Company (hereinafter "Brauns"). In one of the two claims, plaintiff alleged that the four defendants had conspired to blacklist him from employment in violation of §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 (1976). In the second claim, plaintiff alleged a state-law cause of action against the four defendants charging them with tortious interference with plaintiff's business relationships. Plaintiff alleged both diversity and pendent jurisdiction over this state-law claim.
 
 
 6
 On September 11, 1972, the district court allowed the plaintiff to file an amended complaint. This amended complaint was identical to the first complaint, except that it added Wilson as a defendant under both claims.
 
 
 7
 Attorney Simmons left the practice of law to become a state judge on June 1, 1973. On that date, Simmons turned plaintiff's case over to attorney John W. McIlvaine, who has served as plaintiff's attorney since that time.
 
 
 8
 At the close of the presentation of the evidence to the jury at trial, the district court granted Brauns' motion for a directed verdict, but submitted the case against the remaining defendants to the jury. The jury found in favor of one defendant, National Freight Lines, Inc., on both claims. It found Cooper-Jarrett, Matlack, and Wilson to be liable on the antitrust claim. And the jury found only Cooper-Jarrett to be liable on the state-law claim, thus finding in favor of the other defendants on that claim.
 
 
 9
 Upon post-trial motions, the district court held there was enough evidence to support the verdict of the jury, and so denied defendants' motions for judgment N. o. v. But solely because of an improper closing argument by plaintiff's attorney, the district court granted defendants a new trial: "(W)e find that the appeals to passion and prejudice were so gross as to unfairly prejudice the defendant (Sic ) and so permeated the entire argument that they could not possibly be neutralized by cautionary instructions from the court." Baughman v. Cooper-Jarrett, Inc., No. 72-466, op. at 23 (W.D.Pa., August 20, 1974) (unpublished opinion).
 
 
 10
 Plaintiff's case went to trial for a second time in October, 1974, against the three remaining defendants on the antitrust claim, Cooper-Jarrett, Matlack, and Wilson, and against Cooper-Jarrett only on the state-law claim. After the jury was sworn, but before plaintiff's opening statement, Cooper-Jarrett and Matlack settled all claims against them. In return for $37,500 from Cooper-Jarrett and $22,500 from Matlack, plaintiff executed a joint tortfeasor release in favor of those two defendants in settlement of all claims. The settlement agreement specifically included attorneys' fees and costs. And plaintiff specifically reserved all his rights against Wilson, with whom settlement negotiations had proved unsuccessful.
 
 
 11
 At some point after plaintiff received the $60,000 settlement from Cooper-Jarrett and Matlack, he paid $20,000 to attorney McIlvaine as an attorney's fee. The only money plaintiff had previously paid either of his attorneys was $500 that he advanced to Simmons against costs.
 
 
 12
 After an eight-day trial, the jury returned a verdict against Wilson and fixed damages at $25,000. The district court denied Wilson's motion for judgment N. o. v., again finding the evidence sufficient to support the verdict. After trebling the award and then off-setting the amount received in settlement, the district court entered judgment against Wilson in the amount of $25,200. Baughman v. Cooper-Jarrett, Inc., 391 F.Supp. 671 (W.D.Pa.1975).
 
 
 13
 We upheld the jury verdict on appeal. Baughman v. Cooper-Jarrett, Inc., 530 F.2d 529, 531-33 (3d Cir.), Cert. denied, 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976). But because the district court had erred in computing the amount of the settlement to be offset against the damage award, we vacated that part of the district court's judgment and remanded with directions to enter judgment against Wilson for $30,600. Id. at 533-35. Both the order appealed from and our opinion "left undetermined the amount of an award of attorney's fees recoverable pursuant to 15 U.S.C. § 15." Id. at 531 n.2.
 
 
 14
 Thus plaintiff recovered a total of $90,600: $60,000 in settlement from Cooper-Jarrett and Matlack; and $30,600 upon the verdict against Wilson.
 
 
 15
 The Supreme Court denied Wilson's petition for certiorari in October, 1976, thus concluding this litigation on the merits.
 
 B.
 
 16
 PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS
 
 
 17
 In November, 1976, plaintiff filed a petition with the district court seeking attorneys' fees and costs from Wilson. Plaintiff sought compensation for 1,253 hours of attorney time at the rate of $275 per hour, or a total fee of $344,575. Plaintiff also sought costs totaling $2,807.54. Plaintiff attached exhibits to his petition setting forth the hours spent on a day-by-day basis, with general descriptions of how the time was spent, and itemizing the costs claimed. Plaintiff's claim included seven hours for preparation of the fee petition.
 
 
 18
 The district court held an evidentiary hearing on the fee petition. At that hearing, Judge Simmons testified that he initially had been reluctant to accept plaintiff's case because he did not wish to undertake a complex antitrust action where there was no guarantee of payment and where the chances for success seemed slim. Judge Simmons testified as to his general experience and qualifications as an attorney, and emphasized his expertise in handling large, multi-party antitrust cases. He testified concerning the complexity of the issues involved in the case, the nature of the work performed, and the reasons supporting some of the claims in the fee petition.
 
 
 19
 Judge Simmons provided information on the general fee schedules of attorneys in western Pennsylvania from 1972 to 1976, but he stated that because so few firms were capable or anxious to handle such complex antitrust litigation, he would have charged plaintiff $110 per hour over twice what he stated the average hourly fee to be had plaintiff been able to pay. Judge Simmons said that because of the contingent nature of the case and because of the high quality of the work, he had multiplied the $110 per hour figure by a factor of 2.5 to reach the $275 per hour figure claimed in the fee petition.
 
 
 20
 Attorney McIlvaine also testified about the nature of the work performed for plaintiff, and stated the reasons for certain claims made in the petition. McIlvaine offered to allow Wilson to inspect his contemporaneous time records upon which the petition for fees had been based, and he testified generally as to the nature of the issues in the case and quality of the work performed.
 
 
 21
 Wilson offered no testimony. The district court refused to accept into evidence the bills submitted to Wilson by its attorney for the work performed in this case, and Wilson offered nothing else into evidence.
 
 
 22
 In determining plaintiff's legal fee the district court purported to follow the principles we announced in Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973) (Lindy I ); Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976) (en banc) (Lindy II ); and Merola v. Atlantic Richfield Co., 515 F.2d 165 (3d Cir. 1975) (Merola II ).
 
 
 23
 The court began its analysis by calculating the number of hours to be credited to plaintiff's attorneys for their work in preparation of the entire case. This is the first step in calculating the lodestar (hours of service times hourly rate), which in turn is the first step in calculating a reasonable fee under our decisions. The court held that all the hours claimed in the fee petition, as properly calculated, had been verified at the hearing as having been expended in the case. The court rejected Wilson's assertion that plaintiff had overstated the hours spent as having "no basis in the record," Baughman v. Wilson Freight Forwarding Co., 79 F.R.D. 520 at 523, (W.D.Pa., 1977), and noted that Wilson had failed to examine plaintiff's attorneys' records, though such records had been made available for inspection.
 
 
 24
 The district court, however, did deduct 68.5 hours, one-half of the 137 hours spent on the first trial, because the "necessity of a retrial was caused solely by the conduct of (the) plaintiff's counsel in his address to the jury as the result of which the court has determined that at least half the time spend (Sic ) in the first trial was wasted." Baughman v. Wilson Freight Forwarding Co., supra, at 524. The court refused to deduct more than 68.5 hours, however, because it believed that the evidence developed at that trial, which was sufficient to have supported the finding of liability had counsel not erred, was of importance at the second trial. The court did not specify why it chose the figure of 68.5 hours as a reasonable deduction to account for the misconduct of plaintiff's attorney.
 
 
 25
 The district court next determined what portion of the total amount of hours spent on the case had been devoted to recovery against Wilson only. It refused to deduct those hours incurred prior to the filing of the amended complaint that first brought Wilson into the case on the ground that work done prior to Wilson being joined consisted of "general preparation and investigation" important to the prosecution of the whole case, and which formed the basis for the claim against Wilson.
 
 
 26
 To avoid awarding attorneys' fees that duplicated that portion of the settlement paid by Cooper-Jarrett and Matlack that eventually was paid to attorney McIlvaine as an attorney's fee, the district court allocated the attorney hours incurred prior to the settlement among Cooper-Jarrett, Matlack, and Wilson. Since the court considered it to be "impossible to separate how much work was devoted to fastening liability Wilson (Sic ) versus the time spent in fastening liability upon Cooper Jarrett (Sic ) and Matlack," Baughman v. Wilson Freight Forwarding Co., supra, at 524, it decided simply to allocate one-third of the hours prior to settlement to each of the three defendants. The court made no allocation for hours devoted to claims against Brauns and National Freight Lines:
 
 
 27
 In view of the fact that National Freight and Brauns Baking were eliminated at the first trial and determined not to be part of the conspiracy, the court sees no purpose in allocating any time spent to securing recovery against them. We therefore will allocate the hours spent three ways to October 10, 1974 the beginning of the second trial when the other two defendants settled.
 
 
 28
 Id., at 524. The court charged all of the hours claimed for the period after settlement was reached, including all of the second trial and the hours spent preparing the fee petition, to Wilson. The court at no point made any deduction for hours spent in prosecution of the state law claim.
 
 
 29
 Accordingly, the district court calculated the number of hours reasonably devoted to the claim against Wilson as follows: It totaled the number of hours prior to settlement, 858; from this figure it subtracted 68.5 hours, or one-half of the 137 hours devoted to the first trial, for a remainder of 789.5; the court then divided that figure by 3 to account for hours devoted to Cooper-Jarrett and Matlack, producing a quotient of 263.17 hours. To this figure the court added 394 hours, the total (less one hour) of those hours incurred from the time of settlement through the preparation of the fee petition, for a total of 657.17 hours to be charged against Wilson.
 
 
 30
 The district court then considered at what hourly rate to compensate plaintiff's attorneys. The court believed that our opinions in Lindy I, Lindy II, and Merola II, "indicated that . . . (the district courts) should be cautioned about permitting quality of the work to inhere in the lode star (Sic ) award." Baughman v. Wilson Freight Forwarding Co., supra, at 526. Consequently, it did not set the fee at the $110 per hour that Judge Simmons testified he would have charged, because the court believed that figure reflected the "quality factor" that should not be considered in figuring the lodestar. The court accordingly set the reasonable hourly rate at $50 per hour, a figure it based on Judge Simmons' testimony about average hourly rates in western Pennsylvania during the time in question, as well as on the court's own experience. Multiplying this hourly rate times the number of hours it had previously calculated ($50 X 657.17), the court came up with a lodestar of $32,858.50.
 
 
 31
 Still purporting to follow the Lindy line of cases, the court next evaluated the lodestar in light of the contingent nature of the case. The court agreed with Judge Simmons that when the suit first was instituted, the chances of success seemed slim. The court noted that there had been no prior government litigation or investigation to aid plaintiff, as there often was in antitrust cases. It emphasized that plaintiff's attorneys had expended long hours at the risk of not being paid. Finally, the court stated its belief that it was important to encourage attorneys to undertake such contingent antitrust litigation, especially where plaintiffs themselves are unable to pay the attorneys. Accordingly, the court decided to multiply the lodestar by a factor of 2 to account for the contingent nature of the case.
 
 
 32
 The court then turned to the question of whether the lodestar should be further increased to account for the quality of the work performed by plaintiff's attorneys. The court considered the results obtained to be "outstanding" and "excellent" in light of the novel and complex issues involved. It stated that the holding of liability in the circumstances of this case set a significant precedent in the antitrust field. Further, the court had "not included the experience and the value of knowledgeable counsel in the hourly rate," Baughman v. Wilson Freight Forwarding Co., supra, at 526, and so felt the need to account for what the court believed were the high quality of the services rendered and the excellence of the results obtained. The court therefore decided to multiple the lodestar by an additional factor of 1.5 to account for the "quality factor." The court refused to reduce this quality factor to account for the misconduct of plaintiff's attorney in his argument at the close of the first trial, stating that it believed that the deduction of one-half the hours incurred at that first trial was penalty enough.
 
 
 33
 The court then calculated the fee due plaintiff's attorneys:
 
 
 34
 Adding (the multiplier of 1.5 for quality) to the factor of 2 for a contingency gives us a multiplier of 3.5 or a total hourly rate of $175. Applying the multiplier of 3.5 to the lode star (Sic ) amount of $32,858.50 as previously determined, we arrive at a total fee of $115,004.75.
 
 
 35
 Id., at 527. Though this fee exceeded the amount recovered from the jury and the settlement combined, the court held that the fee was proper since it was awarded under a statute specifically providing for attorney's fees, and since it was in the public interest to encourage attorneys to undertake meritorious antitrust suits even though the amounts to be recovered are small.
 
 
 36
 Plaintiff also sought costs in the amount of $2,807.54 for a variety of items. The district court found all of the items claimed as costs "to be in order . . . (and) entirely proper and owing by defendant Wilson." Id., at 527. The court allocated to Wilson only one-third of the costs incurred prior to settlement, however, on the same theory it had used to allocate hours among Wilson, Cooper-Jarrett, and Matlack. To this amount, $244.39, the court added all of the costs incurred after settlement, and awarded plaintiff total costs of $2,418.75.[1] The court made no allocation of costs devoted to prosecution of the claims against Brauns and National Freight, or of the state-law claim.
 
 
 37
 It is the final award of $115,004.75 in attorneys' fees and $2,418.75 in costs, calculated as set out above, from which both plaintiff and Wilson appeal.
 
 II.
 
 38
 The district court was correct in applying our decisions in Lindy I, Lindy II, and Merola II to the assessment of attorneys' fees due plaintiff under § 4 of the Clayton Act. Pitchford v. Pepi, Inc., 531 F.2d 92, 110 (3d Cir. 1975), Cert. denied, 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976). Neither party on appeal challenges the applicability of those decisions, though each asserts that the district court misapplied the law in several respects when it calculated the fee. We therefore must evaluate the legal correctness of the district court's rulings.
 
 A.
 REASONABLE HOURS
 
 39
 Under the Lindy line of decisions, the first step in the calculation of the lodestar is the determination of the number of hours reasonably devoted to the claim upon which plaintiff was successful. Plaintiff contends that the district court erred in allocating compensable hours among Cooper-Jarrett, Matlack, and Wilson. He argues that since he prevailed against Wilson on the conspiracy claim, Wilson is jointly and severally liable for all attorneys' fees incurred in the prosecution of that claim. Since Cooper-Jarrett and Matlack have settled the question of fees, plaintiff believes Wilson remains liable for the amount of fees remaining after proper credit for the settlement agreement is given.
 
 
 40
 We agree with the district court that plaintiff's recovery of fees is limited to compensation only for those hours fairly devoted to the prosecution of the conspiracy claim against Wilson. The court thus was correct to attempt to allocate hours among the various defendants.
 
 
 41
 We believe this result is consonant with the language and purpose of the statute under which fees are to be awarded in this case. Section 4 of the Clayton Act provides for recovery of treble damages, costs, and a reasonable attorneys' fee only where the plaintiff establishes that he was "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15 (1976). We believe this language indicates that fees are to be recovered only from the party against whom liability has indeed been established, and only for the hours reasonably devoted to establishing that liability. We do not believe that a defendant may be required to compensate a plaintiff for attorney hours devoted to the case against other defendants who settle or who are found not to be liable. To require such compensation would be to allow a fee to a plaintiff for hours expended in an unsuccessful quest to establish liability, which of course must be established before a fee may be awarded.
 
 
 42
 We recognize, of course, that Wilson is jointly and severally liable for all damages caused by the conspiracy of which it was found to be a part. But that principle of joint and several liability is based on Wilson's collective responsibility with others for the wrongs done plaintiff; it does not extend to a collective responsibility for compensating plaintiff for prosecuting the case against defendants who are never proved to have been part of the conspiracy, or who have been found not to be a part.
 
 
 43
 Moreover, requiring a losing defendant to pay plaintiff for hours spent against non-losing defendants could encourage frivolous claims in an effort to inflate fees. And such a policy could have an adverse effect on the conduct of litigation, impelling a defendant who believes itself not to be liable to settle out of fear that it will be saddled with attorneys' fees incurred by plaintiff in prosecuting his case against other, more egregious offenders who choose to settle rather than risk trial.
 
 
 44
 Though we thus agree that the district court was correct in attempting to apportion the hours for which compensation may be allowed, we cannot approve the manner in which it did so. The court simply allocated the hours prior to settlement among Cooper-Jarrett, Matlack, and Wilson, and allocated the hours after settlement to Wilson. It did not take into account any time spent in prosecution of the claim against Brauns (which won a directed verdict) and National Freight (which won a jury verdict). Nor did the court take into account any hours devoted to the state-law claim. This was error.
 
 
 45
 First, we believe it incorrect for the district court not to have excluded the hours devoted to the case against Brauns and National Freight. No recovery whatsoever was had against those defendants. Indeed, the case against Brauns was not substantial enough to reach the jury. We see no reason why Wilson should be required to compensate plaintiff's attorneys for any portion of the time devoted to the case against these defendants. Accordingly, in recalculating the number of hours reasonably devoted to the case against Wilson, the district court should exclude those hours exclusively devoted to the prosecution of the case against all four of the other defendants.
 
 
 46
 We recognize, of course, "that legal services fairly devoted to the (case against Wilson) are compensable even though those very same legal services also supported the prosecution of the" case against the other four defendants. Hughes v. Repko, 578 F.2d 483, 487 (3d Cir. 1978) (award of attorney's fees under the Civil Rights Attorney's Fees Awards Act). For example, it was necessary to establish the existence of a conspiracy in order to establish Wilson's liability as a member of that conspiracy, and proof of the conspiracy may have required evidence concerning the activities of the other defendants. Such hours devoted in part to the case against other defendants may be fairly charged to Wilson, so long as the plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim against Wilson.[2]
 
 
 47
 Moreover, we believe that the district court erred in simply allocating the hours among the various defendants in proportion to their number. "(T)here is no necessary percentage relationship between the number of (parties sued) and the lawyer time spent on each." Hughes v. Repko, supra, 578 F.2d at 486. Accordingly, the district court should analyze the hours claimed by plaintiff to determine which hours were fairly devoted to the claim against Wilson only. Without such analysis, there is no basis to say that one-third or one-fifth or some other fraction of the total hours incurred should be charged to Wilson. We emphasize that plaintiff bears the burden of proving what hours were devoted to such claim.
 
 
 48
 Further, we believe it was error for the court not to have excluded those hours devoted to the state-law claim. The fees awarded in this case are to be awarded under § 4 of the Clayton Act. As such, they are awarded in relation only to plaintiff's successful antitrust claim. There is no authority to include within the fee under the Clayton Act compensation for work done in connection with the plaintiff's separate state-law claim.
 
 
 49
 Upon remand, then, the district court must recalculate the number of hours to be charged against Wilson by determining how much time was fairly devoted to proving the antitrust claim against Wilson only. We also believe, however, that "Lindy II and Merola II require the district court to determine not only the number of hours actually devoted to the (claim against Wilson), but also whether it was reasonably necessary to spend that number of hours in order to perform the legal services for which compensation is sought." Hughes v. Repko, supra, at 487. In determining the lodestar, the district court made only a determination that a certain total of hours was in fact incurred; upon remand, it should also evaluate whether that total was reasonably incurred in the circumstances.
 
 
 50
 We emphasize that plaintiff as fee-petitioner bears the burden of persuasion on remand to show how many hours were reasonably devoted to the case against Wilson. It thus must present specific evidence of the hours incurred in order to provide sufficient information for the district court to evaluate the claimed hours.
 
 
 51
 Finally, we do not believe it was consistent with the sound exercise of discretion for the district court to have deducted from the total compensable hours one-half the hours devoted to the first trial, while allowing compensation for all hours incurred from the end of the first trial through the second trial. The court's action in this regard clearly compensated the plaintiff for duplicated work, while reducing hours incurred prior to the error that caused the need for duplicated work.
 
 
 52
 In this case, the first trial would have sufficed to establish liability but for the egregious error of plaintiff's counsel in addressing the jury. The only reason given by the district court for granting the new trial was the conduct of plaintiff's counsel. In such circumstances, plaintiff should not be compensated for the extra hours incurred solely because his counsel committed so fundamental an error as he did, especially where those hours duplicated efforts already made. This is particularly so where the compensation would come from a defendant who is not only blameless of the error that caused duplication, but who had to incur the expense of the second trial through no fault of its own. In so holding, we do not mean to imply that every unsuccessful action of counsel requires the district court to disallow credit for the hours attributable to such error.
 
 
 53
 In summary, we hold that, in calculating the number of hours to be used in figuring the lodestar on remand, the district court should re-evaluate the hours claimed up through the first trial to determine what hours were Reasonably devoted to the antitrust claim against Wilson. The court should then re-evaluate the hours claimed after the second trial, including the hours claimed for the appeal, for the same purpose. It should thus exclude from its consideration the hours claimed for the period from the end of the first trial through the end of the second trial.
 
 B.
 REASONABLE HOURLY RATE
 
 54
 Neither party objects to the district court's determination that $50 is a reasonable hourly rate in this case. Plaintiff, however, does not object because it believes that the use of a multiplier of 3.5 effectively raised the hourly rate to a satisfactory level. Wilson does not object to the $50 rate, but only as long as the multipliers are reduced. We believe the district court committed basic error in setting the hourly rate, however, and we hold it must be recalculated on remand.
 
 
 55
 The district court was careful to exclude any consideration of the quality of plaintiff's attorneys in setting the hourly rate. Rather, it believed that our decisions in this area required that expertise, experience, position, or reputation of the attorneys involved should be accounted for only after the calculation of the lodestar amount by the use of a multiplier for "quality."
 
 
 56
 In Lindy II, however, we stressed that considerations going to the quality of plaintiff's counsel should generally be made when setting the reasonable hourly rate, not at some point after the calculation of the lodestar:
 
 
 57
 As a first principle, the court must recognize that a consideration of "quality" inheres in the "lodestar" award: counsel who possess or who are reputed to possess more experience, knowledge and legal talent generally command hourly rates superior to those who are less endowed. Thus, the quality of an attorney's work In general is a component of the reasonably (Sic ) hourly rate; this aspect of "quality" is reflected in the "lodestar" and should not be utilized to augment or diminish the basic award under the rubric of "the quality of an attorney's work."
 
 
 58
 Lindy II, supra, 540 F.2d at 117 (emphasis in original).
 
 
 59
 Consequently, we believe that the district court should redetermine the reasonable hourly rate in light of its evaluation of the attorneys in the manner prescribed by Lindy I and Lindy II. Moreover, the court should take into account that plaintiff's fee petition claimed compensation at the same rate for various types of work; the court should scrutinize the fee petition to determine what tasks were ministerial or clerical in nature, and that therefore should not be compensated at the same rate as legal services. Further, some of the hours were incurred by a member of a law firm, and the court should find out if any of the hours claimed were logged by junior partners or associates and fix the reasonable rate accordingly. Finally, since two attorneys are involved, the district court should fix the reasonable hourly fee to be allowed based on an independent evaluation of each attorney in light of the Lindy factors. As we said in Lindy I :
 
 
 60
 The value of an attorney's time generally is reflected in his normal billing rate. A logical beginning in valuing an attorney's services is to fix a reasonable hourly rate for his time taking account of the attorney's legal reputation and status (partner, associate). Where several attorneys file a joint petition for fees, the court may find it necessary to use several different rates for the different attorneys. Similarly, the court may find that the reasonable rate of compensation differs for different activities.
 
 
 61
 Lindy I, supra, 487 F.2d at 167.
 
 
 62
 Though plaintiff bears the burden of establishing what hourly rate is reasonable, we emphasize that the hourly rate that plaintiff claims that his attorneys would have charged him is not necessarily a reasonable rate in the circumstances of the case. The district court, therefore, should take care to scrutinize the basis of plaintiff's hourly rate claim to insure that the rate allowed is a reasonable one in light of all the circumstances of the litigation.
 
 C.
 CONTINGENCY FACTOR
 
 63
 The district court multiplied the lodestar by a factor of 2 to account for the contingent nature of the case. When the district court recalculates the lodestar on remand, we believe it should also re-evaluate the contingency factor in light of that recalculated lodestar. We note that, except in the most unusual circumstances, it is not consistent with the sound exercise of discretion to increase the lodestar by so large a factor as 2 in order to account for contingency. Even in Lindy II, a case far more complex and difficult than this one, we approved an increase of twice the lodestar to account for Both Contingency And quality, and we did so with some reluctance. Lindy II, supra, 540 F.2d at 118. In this case, the circumstances do not justify such a large increase for contingency.
 
 
 64
 When this case is evaluated in light of our analysis in Lindy II, the unreasonableness of the large increase for contingency becomes apparent. It is true that plaintiff's attorneys here risked a large expenditure of hours without guarantee of payment, and did so in a case where they did not have the benefit of prior government litigation or investigation. And it is true that the attorneys advanced substantial costs, and that there has been some delay in payment of the fee. All of these factors properly may be considered under Lindy II in evaluating contingency. It is also true, however, that the case was not complex legally or factually and that damages were relatively easy to prove. Under Lindy II, these factors also are to be considered in evaluating contingency, and in this case they appear to cut against any increase in the lodestar. Lindy II, supra, 540 F.2d at 117.
 
 
 65
 Moreover, the lodestar as originally calculated by the district court was a significant amount in comparison to the amount awarded plaintiff in damages. In such circumstances, the "court may find that . . . the amount found to constitute reasonable compensation for the hours worked was so large a proportion of the total recovery that an increased allowance for the contingent nature of the fee would be minimal." Lindy I, supra, 487 F.2d at 168. We believe the district court should evaluate the recalculated lodestar with this caveat in mind before it fixes any increment to account for the contingent nature of the case.
 
 D.
 QUALITY FACTOR
 
 66
 The district court also multiplied the lodestar by a factor of 1.5 to account for what it believed to be the excellent result achieved in this case, and to account as well for the special experience, expertise, and quality of performance of plaintiff's attorneys. We believe that the district court allowed too great an increase to account for the quality of the work performed by plaintiff's counsel. As noted in part II-B, Supra, the decision in Lindy II makes it clear that the district court should have considered the general quality of plaintiff's counsel, their reputation, expertise, and position when it set the reasonable hourly rate. Accordingly, such factors should not have been considered in deciding whether to augment or diminish the lodestar because of quality.
 
 
 67
 Moreover, as we have repeatedly stressed, any addition to or subtraction from the lodestar to account for the quality of an attorney's work "is designed to take account of an unusual degree of skill, be it unusually poor or unusually good." Lindy I, supra, 487 F.2d at 168. An increase or decrease for quality "reflects exceptional services only," Lindy II, supra, 540 F.2d at 118, and "(i)n making allowance for the quality of work, the court must keep in mind that the attorney will receive an otherwise reasonable compensation for this time under the figure arrived at from the hourly rate." Lindy I, supra, 487 F.2d at 168.
 
 
 68
 In this case, application of the standards established in Lindy II to judge quality leads us to doubt whether the court was justified in increasing the lodestar for quality. Indeed, in the circumstances of this case, the district court should consider whether the lodestar should be reduced because of the quality of counsel's performance. Here the extent of actual recovery does not compare favorably with the amount of liability to which Wilson was exposed. Lindy II, supra, 540 F.2d at 118. This case did not involve complex factual or legal issues, and it is difficult to say that the professional methods utilized were efficient, or that the benefits produced warrant the awarding of the full value of the hours expended. Merola II, supra, 515 F.2d at 168-69.
 
 
 69
 Further, we doubt the correctness of the district court's approach to the quality factor in light of the improper conduct of plaintiff's attorney at the first trial. That misconduct was solely responsible for great duplication of effort and expense in this case, not only for the parties but for the court. It should be remembered that the defendant, who must pay plaintiff's attorneys' fees, was required to incur the considerable additional expenses associated with the second trial solely because of plaintiff's error. Plaintiff, of course, will be denied compensation for the hours caused by the improper conduct of his attorney. Even so, we do not believe that fact prohibits the district court from considering the egregious error of plaintiff's attorney in adding to or subtracting from the lodestar because of the quality of the work performed.
 
 
 70
 Finally, the quality factor like the contingency factor should be evaluated in relation to the amount of the lodestar. The amount to be added to account for quality "(o)ften . . . will bear a reasonable relationship to the aggregate hourly compensation." Lindy I, supra, 487 F.2d at 169. Only in the most unusual circumstances will the quality of the attorney's work justify so large an increase as was allowed in this case.
 
 
 71
 In this regard, we stress that the proper calculation of the lodestar is by definition the calculation of a reasonable compensation for the time expended by the attorney. As such, it usually will equal, or closely approximate, the ultimate fee to be awarded. Adjustments in the lodestar allowed for unusual quality are designed to account for exceptional circumstances only. Such adjustments should not be used automatically in the routine case to round out fees that are otherwise the result of the calculation of the lodestar. And "(t)he heavy burden of proving entitlement to such an adjustment is on the moving party." Lindy II, supra, 540 F.2d at 118.
 
 
 72
 Consequently, upon the remand the district court should re-evaluate the quality factor once it has calculated the lodestar. And it should do so in light of the factors we have outlined, as well as in light of the size of the lodestar as redetermined.
 
 E.
 
 73
 HOURS DEVOTED TO THE PREPARATION OF THE FEE PETITION
 
 
 74
 The district court awarded compensation for seven hours that plaintiff incurred in preparing the fee petition. Wilson does not challenge that ruling on appeal, and we therefore express no opinion on the allowability of compensation Vel non for such hours. We do agree with Wilson, however, that hours devoted to the fee petition should not be augmented or diminished because of the contingent nature of the case or the quality of the work. Such hours are incurred apart from the prosecution of the main case, and it is upon the nature of the main case and the quality of the work done on it that adjustments to the lodestar are based. Accordingly, the hours devoted to preparation of the fee petition should not be included in the lodestar amount for purposes of adjusting that amount for contingency or quality.
 
 F.
 REASONABLE FEE
 
 75
 Section 4 of the Clayton Act allows a "reasonable attorney's fee" to a plaintiff who has established injury under the antitrust laws. We believe that the analysis set out in our decisions in Lindy I, Lindy II, And Merola II provides a method for the determination of what fee is reasonable under the circumstances and within the meaning of the Clayton Act. Under the Lindy Line of cases, the district court must examine the hours devoted to the successful claim to insure that they were reasonably incurred, and must set the hourly rate at a reasonable figure as well. Moreover, the court can adjust the lodestar to account for the contingent nature of the case and the quality of the work performed, whether exceptionally poor or exceptionally good: in making these adjustments to the lodestar, the court, if it follows faithfully our analysis, can make adequate adjustments to the lodestar to insure that the fee is no more than is reasonably warranted by the circumstances and by the purposes of the antitrust laws. We do note, however, that the court's determination to adjust the lodestar should be supported by a statement of reasons supporting its decision.III.
 
 
 76
 We believe that Wilson is correct in asserting that the district court erred in apportioning costs. Upon remand, costs should be apportioned among the five defendants, and between the antitrust and state law claims, in the same manner in which the hours supporting the fee are to be apportioned. That is, Wilson should be taxed only with costs fairly devoted to the recovery upon the antitrust claim against it. Moreover, costs for the period from the end of the first trial through the second trial should be denied, since such costs were incurred because of the conduct of plaintiff's counsel at the first trial and are duplicative of other costs.
 
 
 77
 Wilson also says that the district court allowed costs for certain items not properly taxable as costs in such a case. The opinion of the district court did not address Wilson's contentions on this matter, and it is unclear to us if Wilson's objections were addressed to the district court in the first instance. Since the district court must recalculate costs upon remand as well as the fee to be awarded, we will allow the district court to rule on Wilson's objections at that time.
 
 IV.
 
 78
 The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 79
 GARTH, Circuit Judge, concurring.
 
 
 80
 I concur fully in Chief Judge Seitz's opinion and therefore in the result which it reaches. Two aspects of that opinion however do not completely express my views which I believe to be relevant in the context of calculating an award of attorney's fees in a statutory case (as distinct from a common fund case). I therefore believe it appropriate to add the following two observations in the hopes that they may afford additional guidance to the district courts.
 
 
 81
 First, while acknowledging that we are not called upon to delineate those erroneous and "unsuccessful action(s) of counsel" which result in the discrediting of hours "attributable to such error," See Maj.Op. at 1216, nevertheless I believe that it is important to define the standard by which counsel's actions may be assessed. In my opinion, the court should not disallow compensation for hours where an attorney In good faith and With reasonable grounds to believe that his or her conduct is proper nevertheless commits a trial error, which error results in additional proceedings. For example, I have in mind a situation where an attorney, in good faith and with reasonable grounds to believe that evidence which he or she offers is properly admissible, urges the admission of evidence which is ultimately held excludable, thereby necessitating an award of a new trial or a reversal. The hours attributable to the attorney's error should not, in my opinion, be subtracted from the lodestar hourly component. However such a situation is a far different situation than the one presented in this case.
 
 
 82
 My second observation concerns that portion of Chief Judge Seitz's opinion which deals with the reasonableness of the attorney's fees. While I concur with Part II-F of that opinion, I would not restrict the district court's calculation of the reasonableness of an attorney's fee award in an antitrust case to solely the consideration of the policies underlying section 4 of the Clayton Act. Rather, it is my understanding that where a statute authorizes an award of attorney's fees, the district court may consider in addition to the substantive purposes of the statute factors going to the reasonableness of the award. I have previously characterized this process as the "post-Lindy discretionary adjustment," See Hughes v. Repko, 578 F.2d at 491-493 (3d Cir. 1978) (Garth, J., concurring).[1] Of course those adjustments must not only be supported by a statement of reasons, as Chief Judge Seitz points out, but they must also be based on the record. In sum, the district court judge must not only be guided by the particular legislation under which the action was brought and the fees awarded, but the court is also obliged to evaluate the reasonableness of the award under the principles established in Hughes v. Repko. See id. at 488 (majority opinion); Id. at 491-492 (Garth, J., concurring).
 
 
 
 [1]
 The court stated that plaintiff claimed that costs incurred after the settlement totaled $2,174.36. It was this figure that the court added to one-third of the pre-settlement costs ($244.39) to reach the total costs of $2,418.75. In fact, however, plaintiff claimed costs after settlement of only $2,074.36. Added to one-third of the pre-settlement costs, this would give a total cost of $2,318.75
 
 
 [2]
 Wilson thus might be required to compensate plaintiff for certain hours that were devoted to prosecution of the case against the other defendants as well as Wilson. We do not believe, however, that Wilson's fee liability should be diminished by setting-off that part of the settlement paid by Cooper-Jarrett and Matlack that went to pay attorneys' fees. Wilson received full credit for that settlement including the part that went for attorneys' fees when the full amount of the settlement was credited against Wilson's damage liability. Baughman v. Cooper-Jarrett, Inc., 530 F.2d 529, 533-35 (3d Cir.), Cert. denied, 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976)
 
 
 [1]
 These factors include, for example, the customary attorney's fees for similar work, fee awards made in similar cases, etc. See Hughes v. Repko, 578 F.2d at 492 n.6 (Garth, J., concurring), Citing Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1975)