In the Matter of Alfred G. MATTERA.

Alfred G. MATTERA, Plaintiff–
Appellant,

v.

Gerald BLUM, et al., Defendants–
Appellees.

Civ. A. Nos. 91–4867, 91–5212.

United States District Court,
E.D. Pennsylvania.

June 12, 1992.

---

MEMORANDUM

ROBERT F. KELLY, District Judge.

This is an appeal from an Order of the United States Bankruptcy Court dated June 18, 1991 granting in part Appellant's motion for attorney's fees. Appellant, Alfred G. Mattera, filed a motion for attorney's fees after his chapter 13 bankruptcy case settled. Appellant sought attorney's fees of $18,450.50 plus $1,527.26 for costs against each of the three sets of defendants jointly and severally. The bankruptcy court awarded Appellant $11,096.00 in attorney's fees and $1,527.26 for reimbursement of costs against only Appellees Gerald Blum and Edward Pressman ("B & P") and Appellee Delaware Valley Savings

& Loan ("DVSL"). Appellant filed this appeal to reverse the bankruptcy court's failure to award attorney's fees against Appellees Kulp, Haughton and Weiner ("K, H & W"). B & P filed a cross appeal seeking to reverse the bankruptcy court's award of attorney's fees against them. For the reasons stated below, the decision of the bankruptcy court will be affirmed.

## FACTUAL AND PROCEDURAL HISTORY:

In February of 1987, Appellant was unable to keep up with his mortgage payments due to health problems. Foreclosure proceedings were instituted and Appellant's property was sold at a sheriff's sale on September 14, 1987. The balance due on the mortgage at the time of the sale was $13,000. Appellee Weiner ("Weiner") purchased the home at the sale for $49,900 on behalf of himself and Appellees Kulp and Haughton. Weiner then contacted Appellant and told him that he could recover his home by obtaining a loan to pay the amount of the judgment and costs and to pay K, H & W $7,500. Weiner also demanded a payment of $2,500 prior to closing and rent of $450 for each of the two and a half months until the closing which Appellant paid. Weiner represented that once the sheriff's sale was set aside, Appellant would receive a refund of the $4,990 deposit paid to the sheriff.

Appellee Blum ("Blum") was contacted to assist Appellant in obtaining a loan. Blum demanded that Appellant sign an agency agreement with American Mortgage Investment Corporation ("AMIC"). This agreement stated that AMIC would attempt to obtain a mortgage for Appellant at an interest rate and points prevailing at the time the loan is secured, and if AMIC did this, then Appellant would pay a fee to AMIC.

Appellant obtained a loan from DVSL. Prior to settlement, Appellant was given a Truth–in–Lending ("TILA") disclosure statement by Blum. At settlement, he was given another TILA disclosure statement by DVSL. The amount financed, the finance charge and the annual percentage rate on the two statements differed substantially. The notice of rescission given to Appellant by DVSL gave him until midnight of the second business day after the transaction to rescind the transaction. At settlement on November 14, 1987, a total of $9,827 was paid to K, W & H in addition to the amount paid to satisfy the first mortgage. Over $4,200 was paid to Blum and AMIC. The mortgage was for approximately $35,000 at an interest rate of 16.55%. B & P admitted that they had engaged in many financing transactions with DVSL in the past and that AMIC was their corporation.

After settlement, Weiner had the sheriff's sale set aside, however, Appellant never received the refund of the $4,990 deposit from K, H & W. After making the first ten payments, Appellant was unable to make his monthly mortgage payments to DVSL due to his health and foreclosure proceedings were again instituted. At trial, Blum testified that B & P had a moral obligation to render DVSL harmless from liability in order to preserve the ongoing business relationship between B & P and DVSL. A sheriff's sale was held on August 7, 1989 and DVSL purchased the home and then assigned its bid to B & P. The total price paid for the property was $41,978.65. At this time, the property was worth approximately $67,000.

B & P demanded Appellant to vacate the property but Appellant refused to leave. B & P thereafter filed an ejectment action on October 12, 1989. Subsequently, Appellant filed a chapter 13 bankruptcy case on May 18, 1990. B & P then filed a motion for relief from the automatic stay to continue their ejection proceeding. Prior to a hearing on the motion for relief from stay, Appellant filed an adversary proceeding which was consolidated with the stay motion. Appellant stated claims against the three sets of defendants for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Racketeering Influence Corrupt Organizations Act, common law fraud, Truth–In–Lending Act, and a Section 548 claim in which Appellant sought to set aside the second sheriff's sale of August 7, 1989. On September 7, 1990,

**690**

Appellant sent notice to DVSL and B & P that he was rescinding the transaction of November 14, 1987 pursuant to 15 U.S.C. section 1635. Prior to trial of the adversary proceeding, Appellant agreed to settle the claims against K, H & W for $5,900. However, the other defendants objected to the dismissal of K, H & W and the bankruptcy court disapproved the settlement. A trial proceeded on October 22, 1990 against all defendants.

Following trial and submission of proposed findings of fact and conclusions of law, a settlement conference was held and all parties agreed to settle the case. A formal stipulation was executed by the parties and filed with the bankruptcy court on March 27, 1991. After withdrawing their original pretrial offer of $5900, K, H & W agreed to pay Appellant $7500 to settle the case. B & P agreed to grant Appellant a life estate in the home in exchange for the payment of $100 per month. Appellant could exchange this life estate for $32,000 in cash a year after the settlement with the amount declining slightly each year thereafter. Expressly left undecided was the Appellant's right to attorney's fees from any of the defendants. Since the case settled, the bankruptcy court never made any findings of fact or conclusions of law. Thereafter, Community Legal Services, Inc. ("CLS"), by Henry J. Sommer, Esquire ("Sommer"), counsel for Appellant, filed a motion for attorney's fees which is the subject of this appeal.

CLS sought fees for Sommer's services of 65.25 hours at hourly rates of $200, $210, and $220 for 1989, 1990 and 1991 respectively. Compensation was also sought for 41.3 hours of services performed by Lourdes Fuentes, a CLS law student intern, for work on the UDAP and RICO claims at $70 per hour. Reimbursement of $1,527.26 was sought for costs of deposition transcripts, witness fees, the services of an appraiser and duplicating costs. Total fees sought were $18,787.76. However, CLS also demanded an additional $1,210 for arguing and briefing the motion for attorney's fees increasing the total demand to $19,997.76.

**DISCUSSION:**

The bankruptcy court concluded that the only services compensable were those which could be fairly allocated to litigation of (1) the Debtor's potentially meritorious statutory fee claim under the federal Truth–in–Lending Act, 15 U.S.C. section 1601 *et seq.* (the "TILA claim"); and (2) non-fee claims such as the Debtor's claims under 11 U.S.C. section 548(a)(2) (the "548 claim"), the services which could not be severed from the services performed on the TILA claims. *Mattera v. Blum,* 128 B.R. 107, 108–09 (Bankr.E.D.Pa.1991). The bankruptcy court would not allow compensation for services on the "clearly nonmeritorious" claims under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. section 1961 *et seq.* (the "RICO claim"), or under state law prohibiting unfair and deceptive acts and practices, 73 P.S. § 201–1 *et seq.* (the "UDAP claim"). *Id.* at 109. The court also held that the fees were only chargeable to the parties that were implicated in the TILA claim and the 548 claim. B & P and DVSL were found jointly and severally liable for $11,096.00 in attorney's fees plus costs of $1,527.26. However, the court refused to award fees against K, H & W or defendant Merrill Seidman, the Vice–President of DVSL, since "none of the Debtor's viable claims" against these parties were related to the TILA claim. *Id.*

■ The standard of review is whether the bankruptcy court committed errors of law or made clearly erroneous findings of fact. The present case is complicated by the fact that it involves three sets of defendants, multiple claims which include both fee shifting and non fee shifting claims, and the case settled before the bankruptcy court entered findings of fact and conclusions of law.

■ No fee may be awarded for services on an unsuccessful claim. *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). The *Hensley* case addressed the situation where it is difficult to divide hours expended on a claim-by-claim basis because the claims involve either a common core of facts or are

based on related legal theories. *Id.* Since such a lawsuit cannot be viewed as a series of discrete claims, the Court stated that the focus of the district court should instead be on the significance of the overall relief obtained by the plaintiff. *Id.* The Court went on to state that if the plaintiff "has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.*

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* at 440, 103 S.Ct. at 1943.

■ The Third Circuit has held that in cases involving multiple defendants, the district court must allocate among them the time chargeable to each defendant. *Pawlak v. Greenawalt*, 713 F.2d 972, 979 (3d Cir.1983) (citing *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214–15 (3d Cir.1978)). Hours chargeable to claims against other defendants are chargeable to a defendant against whom the claim has not been asserted if the plaintiff can establish that such hours were also fairly devoted to the prosecution of the claim against that defendant. *Id.* Moreover, the fee award must exclude compensation for hours spent on unsuccessful claims or on distinct successful claims for which there is no statutory fee-shifting authority. *Northeast Women's Center v. McMonagle*, 889 F.2d 466, 476 (3d Cir. 1989).

*Claims against K, H & W:*

Appellant asserted claims against K, H & W for violations of RICO, UDAP and common law fraud. The only statutory fee shifting claims are the RICO claim and the UDAP claim. Appellant cites *Hensley* and *In re Steinbrecher*, 928 F.2d 397 (3d Cir. 1991) in support of his position that he is entitled to attorney's fees against K, H & W. Based upon these cases, Appellant claims that once it is established that a plaintiff achieved excellent results, then the plaintiff is entitled to reasonable compensation for time expended on the case as a whole. However, *Hensley* and *Steinbrecher* did not involve the problem of allocation of fees among several party defendants where different claims are asserted against these parties. Moreover, the Court in *Hensley* stated that where a plaintiff has failed to prevail on a claim that is distinct from his successful claims, the hours spent on the unsuccessful claim is excluded in determining the amount of a reasonable fee. 461 U.S. at 440, 103 S.Ct. at 1943; *see also Northeast Women's Center*, 889 F.2d at 476. In the present case, the issue of whether Appellant was successful on his claims is relevant in determining attorney's fees since this lawsuit involves claims some of which are distinct and unrelated to other claims.

■ Appellant argues that it was improper for the bankruptcy court to view the merits of the case when determining attorney's fees since the case settled. I find that the bankruptcy court did not err in evaluating the merits of the individual claims since any other conclusion would discourage settlement in a case such as this where the parties leave open the issue of attorney's fees. In *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1979), the Supreme Court upheld the district court's evaluation of the sufficiency of the relief obtained through a consent decree. The Court stated that "[t]he District Court's ... finding was based on its familiarity with the progress of the litigation through the pleading, discovery, and settlement negotiation stages." *Id.* at 130, 100 S.Ct. at 2575. In the present case, the bankruptcy court invested significant amounts of time and effort into the analysis of the substantive issues involved in this case. Moreover, this case settled after a full trial on the merits. The bankruptcy

court stated that "[w]e therefore had formed quite definite opinions regarding the merits of the issues presented by the case...." *Mattera*, 128 B.R. at 113–14. It was entirely proper for the bankruptcy court to evaluate the likelihood of success of Appellant's claims since it was extremely familiar with the substantive issues in the case.

■ The bankruptcy court found that Appellant's RICO and UDAP claims lacked merit. *Mattera*, 128 B.R. at 114–15. This determination is supported by the record and not clearly erroneous. Moreover, these claims are distinct and unrelated to Appellant's potentially meritorious fee shifting TILA claim. Thus, the bankruptcy court accurately determined that Appellant was not entitled to attorney's fees for services performed on the RICO claim or UDAP claim. Since these were the only fee shifting claims asserted against K, H & W, Appellant's request for attorney's fees against K, H & W was correctly denied by the bankruptcy court.

### *Claims against B & P and DVSL:*

On cross appeal, B & P argues that the bankruptcy court erred in awarding attorney's fees against them. The bankruptcy court concluded that Appellant was entitled to compensation from B & P and DVSL jointly and severally for services performed on Appellant's potentially meritorious fee shifting TILA claim and services performed on the non fee shifting 548 claim which could not be severed from the services performed on the TILA claim. *Mattera*, 128 B.R. at 109. The court believed that these claims working together drove the settlement in this case. *Id.* at 116.

■ B & P claim that the only "successful" claim against them was the 548 claim and the services performed on this claim alone could not form the basis of an award of attorney's fees since it is a non fee shifting claim. B & P maintain that Appellant never asserted any TILA violations against them in his complaint or otherwise. B & P argue that:

All TILA violations, if any, were committed by defendant, DVSL. It was DVSL

that gave the second incorrect TILA disclosure statement as well as an allegedly improper notice of rescission. As such, if anyone is responsible for plaintiff's attorney's fees, it is DVSL, not B & P. (Brief for Appellees Blum and Pressman at page 5.)

As the bankruptcy court discussed in detail, the 548 claim and the TILA claim were closely related. The bankruptcy court stated that:

Much of the gathering of evidence, preparation for trial, proof of facts at trial, and post-trial briefing of these two issues were intertwined. Therefore, except for those portions of his services which Sommer concedes were devoted exclusively to the 548 claim, we are disinclined to allocate the time spent on services on these two claims.

*Mattera*, 128 B.R. at 118. The court also found that even if B & P was not directly implicated in the TILA claim, three factors rendered them liable for the fees awarded. *Id.* at 119. These factors are: (1) B & P were the principal purveyors of the illegal aspects of the transactions in issue; (2) the 548 claim was the key that unlocked the Pandora's box of the potentially very dangerous TILA claim; and (3) B & P's willingness to expose itself to the consequences of DVSL's potential TILA violation since B & P pursuant to an informal guarantee agreed to hold DVSL harmless from liability. *See id.* at 119. I find that the bankruptcy court did not err in holding B & P jointly and severally liable with DVSL for the fees awarded based upon these conclusions which are supported by the record. Clearly persuasive is the fact that Blum testified at trial that B & P had a moral obligation to render DVSL harmless from liability in order to preserve the ongoing business relationship between B & P and DVSL. Moreover, because it is difficult to separately allocate the hours spent on these claims since they involve a common core of facts and are related, the bankruptcy court properly found B & P and DVSL jointly and severally liable for services performed on the fee shifting TILA claim and services performed on the nonfee shifting

548 claim which could not be severed from the services performed on the TILA claim.