## Karl C. WEHR

v.

## The BURROUGHS CORPORATION.

### Civ. A. No. 76–581.

United States District Court,
E. D. Pennsylvania.

Aug. 31, 1979.

---

Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiff.

Carter R. Buller, Robert M. Goldich, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

MEMORANDUM

HUYETT, District Judge.

Following a verdict[1] for plaintiff in this action brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), counsel for plaintiff filed a petition for an award of attorneys' fees and costs. Petitioners seek a total award in the amount of $161,879.00 in attorneys' fees for the firm of Cohen, Shapiro, Polisher, Sheikman & Cohen (hereinafter referred to as "the Cohen firm"), $5,098.30 for the firm of Dilworth, Paxson, Kalish & Levy (original counsel for plaintiff) (hereinafter referred to as "the Dilworth firm"), $9,438.69 in costs for the Cohen firm, and $281.19 in costs for the Dilworth firm. In addition, the Cohen firm requests $11,816.25 in fees for the time spent preparing the petition for attorneys' fees. A detailed breakdown of the petitioners' request, including the number of hours spent by each attorney or paralegal and the hourly rates charged by each, is included as an Appendix A to this memorandum.

It is not disputed that attorneys' fees and costs may be awarded under the ADEA. Section 7(b) of the Act, 29 U.S.C. § 626(b), incorporates by reference section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), which provides in part that "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Furthermore, the parties agree that the standards enunciated by the Court of Appeals for the Third Circuit in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*) and *Lindy Brothers Builders Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (*Lindy II*) and their progeny govern the award of attorneys' fees. With these standards in mind, we proceed to evaluate the reasonableness of the fees requested.

## I.

### 1. *Calculation of the "Lodestar"*

The first step in determining a reasonable fee is to calculate the "lodestar" amount—that is, the reasonable number of hours devoted to pursuing the claim multiplied by the reasonable hourly rate. *Lindy I, supra* at 167. In calculating the first part of the "lodestar", the Third Circuit has made it clear that the district court is required to determine "not only the number of hours actually devoted to the successful claims, but also whether it was reasonably necessary to spend that number of hours in order to perform the legal services for which compensation is sought." *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978). The petitioners bear the burden of showing that the number of hours attributable to the pursuit of the successful claim was "reasonably necessary." *Id.*

The petitioners have submitted to us records demonstrating the number of hours actually spent by the Dilworth firm and the Cohen firm in pursuit of this claim. These figures were maintained contemporaneously, and there is no reason to doubt their accuracy. However, it is much more difficult for us to determine whether or not petitioners have met their burden of demonstrating that these hours were reasonably necessary in the pursuit of this claim. In view of the submissions made by the petitioners, it is abundantly clear that the standards set out in *Lindy I, Lindy II,* and cases following are more easily stated than applied.

For example, in the case at hand, petitioners submitted an Affidavit in Support of Application for Allowance of Attorney's Fees and Costs. This affidavit contained a breakdown of the number of hours billed by attorneys, law clerks, and paralegals at the Cohen firm, and the billing rates for each. In addition, attached to the affidavit were computer printouts which contained billing

---

1. Judgment for plaintiff Karl Wehr was entered in the amount of $126,760.00 on August 3, 1978.

information for each lawyer, law clerk, and paralegal. These computer printouts provided us with a notation of the date that each party worked on the *Burroughs* case, the number of hours spent on the case on that date, and a brief description of the nature of the activity engaged in (*e. g.*, "Discovery; Correspondence", "Discovery: Telephone", "Trial"). These printouts do not provide any detailed information concerning the exact nature of the project worked on; however, by coordinating the dates on the printouts with the dates on which documents were filed, etc., it is sometimes, but not always, possible to estimate how many hours were spent on different matters.

Subsequent to the Third Circuit's decisions in *Hughes v. Repko, supra; Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir. 1978); and *Prandini v. National Tea Company*, 585 F.2d 47 (3d Cir. 1978) (*Prandini II*), and in an attempt to comply with the mandates of those cases, we ordered the parties to provide us with additional information. By Order dated August 31, 1978, we requested:

> In anticipation of the hearing and in consideration of the court's duty to closely scrutinize plaintiff counsel's petition to determine the nature of the activities of counsel in a meaningful manner, *see Baughman*, plaintiff's counsel shall submit:
>
> a. A supplemental affidavit providing specific detailed evidence of the precise services rendered by counsel for plaintiff and reasonably necessary hours expended particularly with respect to each identifiable event or activity in the case, *e. g.*, each document filed, each deposition involving participation by counsel for plaintiff, each conference attended, each court hearing, in order to provide sufficient and adequate information for the court to evaluate claimed hours and the nature of the services performed. . . .

In response to this Order, counsel for plaintiff submitted to us a Supplementary Affidavit, filed September 21, 1978. This affidavit stated that, due to the method used by the Cohen firm to keep its time sheets, the information the Court requested was, for the most part, not available. Only the general nature of the activities were recorded on the time sheets, and this information could be obtained from the computer printout. The affidavit further stated "Your affiant does represent to this Court that neither he nor anyone else in the Cohen Firm, to the best of his knowledge and belief, ever expended or recorded time for this case unless he or she in the exercise of their professional judgment believed it to be reasonably necessary and proper in order properly to represent the client and carry out counsel's obligation to the Court and to the client under applicable statutes, cases, rules of court and the Code of Professional Responsibility."

In light of the general nature of the petitioner's response, we are placed in a quandry. It is true that, by laboriously comparing the docket entries with the computer printouts, we may be able to reach rough estimates of the amount of time devoted to different, specific activities. However, these estimates are only approximate and may not in all instances furnish us with the information needed to make a determination of "reasonableness." Furthermore, this "piecing together" is a very time-consuming task.[2] Requiring the court to perform this task seems to contravene the statement "It was not and is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps even dwarfing the case in chief." 540 F.2d at 116.

On the other hand, by accepting wholesale petitioners' representations that the hours expended were "reasonably necessary" we would be abdicating our judicial function. The defendant has raised some very specific objections to the reasonableness of the hours expended by plaintiff's counsel. In order to fairly assess these objections, we are required to examine the

---

2. There have been close to 300 documents filed of record in this case.

documentation which has been submitted and make whatever reasonable determinations are possible. Although these "educated guesses" may lack the exactitude required by the Third Circuit caselaw, we do not believe that petitioners can validly object since their failure to provide complete, detailed documentation is the direct cause of that inexactitude.[3] Furthermore, we believe that estimates, no matter how inexact, based upon documentary evidence are preferable to the "across-the-board" percentage reductions condemned in *Hughes* and *Baughman*.

■ Bearing the above discussion in mind, we proceed now to discuss the specific objections raised by Burroughs. First, Burroughs requests that some reduction in the lodestar be made because of the overlap in discovery and other pretrial proceedings caused by the withdrawal of Dilworth as counsel and the entry of appearance by the Cohen firm. This change in counsel was necessitated by a motion to disqualify filed by Burroughs. This motion was never ruled upon; instead, Dilworth voluntarily withdrew and Cohen entered an appearance. Burroughs seeks to penalize the Cohen firm for the duplication and overlap thus entailed.

However, we believe that it would be unfair to penalize the Cohen firm for performing what it believed to be its professional responsibility—to carefully review the file upon assuming representation of a new client. It might be more fair to somehow penalize the Dilworth firm; however, Burroughs does not seek to do so. In any case, we are unable to see how any fair reduction of hours could be made to allow for this circumstance. There are no hours expended directly by Dilworth which relate to this overlap; therefore, any subtraction of hours would amount to a purely arbitrary penalty. Therefore, although we perceive the unfairness of requiring Bur-

roughs, in effect, to underwrite the expense of the overlap, we decline to make any adjustments to the lodestar.

■ Burroughs also challenges alleged inefficiency and duplication within the Cohen firm, citing the large number of persons who worked on the case. However, we do not believe that use of large numbers of persons, in and of itself, necessarily demonstrates inefficiency. In fact, the use of young associates and paraprofessionals, for whom a lower hourly rate is charged, to perform more routine tasks may demonstrate a high degree of delegation and efficiency. In this regard, we note the large number of hours logged by Christine Councill, a paralegal assistant employed by the Cohen firm whose time was charged at the rate of $27.50 per hour. The same work performed by a lawyer would have been much more costly. Therefore, we reject this suggestion by Burroughs.

■ Burroughs seeks a reduction of the fee for the amount of time spent in the unsuccessful pursuit of state law claims. The reduction is allowable, not solely because these claims were unsuccessful, but because these non-ADEA claims are not compensable under the statutory authorization for attorneys' fees contained in the ADEA. *Cf. Baughman v. Wilson Motor Freight, supra.* Our problem is to determine exactly how many hours should be deducted for pursuit of the non-ADEA claims. We are mindful that, in discussing the related problem of reduction of hours which benefited other clients or cases, the Third Circuit stated that "the overlapping hours must be identified in the record, and the district court must make findings as to the number of hours of duplication." *Prandini v. National Tea Co., supra* at 52. However, the task of identifying these hours is made considerably difficult by the manner in which petitioners have chosen to main-

---

3. Petitioners were given ample opportunity to submit adequate documentation regarding their fee petition. We note especially the petitioners' failure to be more responsive to the August 31, 1978 Order of the Court setting forth the exact nature of the information required. Petitioners did not estimate the number of hours

spent on the non-ADEA claims and on the motion for sanctions, even though they knew that defendants were challenging the time spent on these matters. Therefore, we are left with the unpleasant task of attempting to cull from petitioners' records estimates of time spent on specific tasks.

tain their records. Nowhere is it stated precisely how many hours can reasonably be allocated to the pursuit of state law claims. Thus are we placed on the horns of a dilemma: we are required, on the one hand, to identify with particularity the number of hours devoted to the state law claims before we deduct them from the total hours reported by the petitioners; on the other hand, we are unable to do so because the petitioners' records—at least with respect to these claims—are not as complete as they could be.[4]

Considerations of fairness require that we make a reasonable estimate on the basis of the information that we have as to the amount of time allocable to non-ADEA claims. Petitioners cannot be permitted to benefit from circumstances over which they alone had sole control. They determined the record-keeping methods to be used, and they prepared the petitions for attorneys' fees submitted to this Court. In reviewing the docket entries, we find that the state law claims were the subject of the defendant's Motion for Judgment on the Pleadings in early March, 1977, and the plaintiff's Motion to Amend in early June. We have carefully reviewed the computer printouts submitted by the Cohen firm, and find that the following amounts of time were billed during the relevant time periods and could reasonably be attributed to the matters involving the state law claims: Bruce Thall—10.5 hours; Alan Lerner—.7 hours; and Willard Yates—14.5 hours. We will therefore deduct these hours from the lodestar. With respect to the Dilworth firm, we are unable to make any estimate based upon the time sheets. On the assumption, however, that at least some time must have been spent in pursuit of the state law claim, we will deduct two hours from the lodestar.

██ Similarly, Burroughs asks us to deduct from the lodestar the amount of time used by petitioners to respond to Burroughs' motion for sanctions. This motion was granted and defendant was awarded counsel fees necessary to file the motion. We believe that Burroughs' request for a reduction is reasonable under the circumstances, since it would be inequitable to permit the petitioners to recover attorneys' fees expended in responding to a motion, which motion was made necessary by petitioners' disregard of the Federal Rules of Civil Procedure. Again, we are forced to estimate the hours spent responding to this motion from an examination of computer printouts provided, and we determine that 11.5 hours of time, attributed to Faye Cohen, shall be deducted from the lodestar.

██ Finally, in calculating the lodestar, we are omitting the hours which are recorded for Ben Slotznick, Betty Metz, and Andrea Smith, because we believe that the petitioners have failed to give us sufficient information to determine whether the hours spent and hourly rates are reasonable. Claims made for these persons are not included in petitioners' initial memoranda supporting the attorneys' fee petition, but only in subsequent computer printouts. Furthermore, their hourly rates are not included in any documents.[5] We have no information concerning their background and qualifications. We believe that petitioners have failed to carry their burden with regard to the request made on behalf of these persons.

The second step to be taken in the calculation of the lodestar is to determine the reasonable hourly rate to be used in valuing the attorneys' services, taking into consideration the attorney's legal reputation and status and his or her normal billing rates. With one exception, to be discussed below, Burroughs does not challenge the validity

---

**4.** The computer records state only very generally the nature of the task performed and the date upon which it was performed. However, we have no idea if the notation "Prepare File Briefs", for example, refers to the state law claims or other legal issues.

**5.** We could, of course, compute their hourly rates by dividing the dollar amounts requested by the number of hours logged by each person. However, we believe that it is part of petitioners' burden to support their request for counsel fees with affidavits containing the hourly rate for each party on whose behalf the fee is requested. *See Merola v. Atlantic Richfield Co.,* 493 F.2d 292, n. 7 (3d Cir. 1974).

of the hourly rates submitted by either the Cohen firm or the Dilworth firm. We therefore accept those hourly rates as reasonable.

Burroughs does contest the hourly rate to be charged for Faye Cohen. Petitioners seek to recover fees at the rate of $60 per hour for the work performed by Mrs. Cohen; Burroughs contends that a rate of $40 would be more reasonable. Mrs. Cohen was admitted to the Bar of the Commonwealth of Pennsylvania in 1974. She has been employed by the Cohen firm since 1977 on a part-time basis whereby she works approximately three days per week. The two Philadelphia law firms which employed her prior to her association with the Cohen firm billed her time at a rate of $35 and $50 respectively. In view of the foregoing, we believe that a reasonable charge for Mrs. Cohen's time would be $50 per hour, and that this rate is comparable to that charged for associates in the Philadelphia area with Mrs. Cohen's level of expertise and experience. The fact that Mrs. Cohen is employed part-time has no impact upon this hourly rate, except insofar as she may have relatively less experience than other persons admitted to the Bar in the same year who have worked full-time.

The lodestar figure we reach, after taking into consideration all of the adjustments discussed above, is $71,859.75 for the Cohen firm and $2,449.15 for the Dilworth firm. In accordance with the mandates of Lindy I and Lindy II, we now proceed to discuss whether adjustments should be made to the lodestar on account of quality or contingency.

2. Adjustments to the Lodestar

Petitioners have asked us to double their lodestar amount to take into consideration the contingent nature of the lawsuit and the quality of work performed by the Cohen firm. Under the mandates of Lindy I and Lindy II, we are required to inquire separately into both the contingency and quality factors, and make findings as to each. The caselaw emphasizes, however, that any such adjustments for either contingency or quality are discretionary and are to be employed only in the "exceptional" case. See, e. g., Baughman v. Wilson Freight Forwarding Co., supra.

In considering the contingency factor, we note initially that this is not a civil rights action involving novel and complex legal issues, nor is it an action brought to extend legal protections to a disadvantaged class. Rather, it is an action brought by a single plaintiff against a large corporation. In such a case, tried before a jury, the likelihood of success is always reasonable. We cannot find, therefore, that the risks undertaken by petitioners in agreeing to represent the plaintiff were of the magnitude to support a discretionary increase of the lodestar. Petitioners also claim that this case was complex both legally and factually. However, while several novel legal issues were raised and litigated—primarily because the ADEA is a rapidly-expanding area of the law—any complexity is adequately compensated by the inordinately large number of hours consumed in litigating this case. Therefore, we conclude that any increase in the lodestar due to contingency is simply not warranted.

Petitioners also request an increase to take into account the quality of work performed. There is no question that the quality of legal representation was good; this is evident from the favorable result petitioner obtained on practically every issue submitted to the jury. However, we believe that high quality legal representation is to be expected from counsel of the reputation and experience of petitioners. This high quality is reflected in the hourly rate charged by petitioners; for example, the hourly rate charged by lead counsel for plaintiff is $90. We do not find that the quality of representation in the instant case is of the unusual degree that would merit an increase of the lodestar. Rather, the quality of legal representation is very adequately reflected on the lodestar figure itself.

Burroughs, on the other hand, requests that we reduce the amount of the lodestar. The caselaw appears to sanction a reduction of the lodestar, so long as the reasons for

the reduction are clearly set forth and supported by the record. *See Hughes v. Repko, supra,* at 489–492 (Rosenn, C. J., concurring; Garth, C. J., concurring). Burroughs charges that petitioners were inefficient and wasteful during discovery and throughout all phases of the trial.

■ This case was hotly contested throughout, and all parties filed a great many more documents than are usually filed in an individual-plaintiff employment discrimination suit. This, however, does not necessarily indicate waste. In order to reduce the lodestar because of waste or inefficiency, we believe that we must identify the specific circumstances in which such waste occurred, and then make reductions for the time spent on these matters. As we have previously mentioned, it is difficult for us to make such findings on the basis of the documents submitted. Nevertheless, we have reviewed the extensive record in this case and we will decline to make any additional reductions for inefficiency.

Burroughs specifically claims that there was needless waste of trial time caused by the dispute surrounding the rebuttal testimony of Dr. Paul Andrisani. Plaintiff proposed to call Dr. Andrisani as an expert to rebut the testimony of defendant's expert, Dr. Hildebrand. Plaintiff's counsel, Mr. Lerner, represented to the Court that he was "surprised" by the testimony of the defendant's expert and had sought out Dr. Andrisani as a prospective witness after hearing Dr. Hildebrand testify. Plaintiff was subsequently denied permission to present Dr. Andrisani on rebuttal, on the grounds that his testimony was not proper rebuttal. Burroughs was of the belief that plaintiff's counsel had in fact anticipated Dr. Hildebrand's testimony and, consequently, had sought out Dr. Andrisani prior to trial. Following discovery of these issues, however, it became clear that Mr. Lerner in fact did not contact Dr. Andrisani until he had heard defendant's expert. *See* deposition testimony of Bernard Siskin and Paul Andrisani.

■ However, Burroughs continues to contend that Mr. Lerner in fact anticipated Dr. Hildebrand's testimony and that time

consumed during trial on the Andrisani matter was wasted time, resulting from Mr. Lerner's inefficiency. We conclude, however, that Mr. Lerner's actions in contacting Dr. Andrisani during trial were entirely proper and made in good faith. Counsel certainly had the right to assess the impact of defense testimony as it unfolded during trial and to attempt to line-up rebuttal testimony deemed necessary to blunt that impact. The fact that this testimony was later excluded does not affect the propriety of counsel's actions.

In sum, we make no adjustments in the lodestar amount. The Cohen firm is therefore awarded attorneys' fees in the amount of $71,859.75.

Finally, we consider whether any adjustments are appropriate with respect to the claim made on behalf of the Dilworth firm. Because that firm did not litigate this claim through to completion, we do not believe that any adjustment for quality or contingency are warranted. Burroughs seeks no reduction to the lodestar. Therefore, we award the Dilworth firm attorneys' fees amounting to $2,449.15. A detailed breakdown of the adjustments made to the lodestar amounts is contained in Appendix B.

### 3. *Attorneys' Fees for Preparation of Fee Petition*

■ Petitioners also request an award of attorneys' fees in the amount of $7,877.50 as compensation for the 164.7 hours spent in litigating the instant petition. Under *Prandini II, supra,* attorneys seeking awards of statutorily authorized fees are entitled to fees for the time spent preparing the fee petition, "to the extent that time was reasonably necessary to obtaining a reasonable fee award." *Id.* at 54.

■ We believe that the total of 164.7 greatly exceeds the time "reasonably necessary" to litigate the matters arising out of this fee petition. We acknowledge, first, that the hours required in the instant case may well be greater than what might be expended in the average case, since the petition itself and the issues raised therein were vigorously contested by the defendant. Moreover, the Court of Appeals decided sev-

eral important cases while the fee petition was pending, necessitating additional briefings and other submissions by the parties.

Even taking all of the above circumstances into consideration, however, we believe that the amount requested by petitioners is unreasonable, for several reasons. First, and most importantly, the task actually accomplished by the documents submitted—in terms of information actually gathered and conveyed to the Court—should not have taken the amount of time claimed by petitioners. The very same information could have been documented in far less time and with far fewer submissions. Instead, the petitioners were somewhat inefficient and duplicative in preparing the materials in support of the fee petition. For example, many matters which were challenged by defendants, and thus had to be addressed in plaintiff's reply brief, were matters which could have been met by using more careful documentation in the first instance.[6]

Second, petitioners' submissions were inadequate in crucial respects. Petitioner submitted approximately nine documents to the court, for a total of approximately 119 pages, of which four documents were legal memoranda. Nonetheless, at the time of the hearing, this Court had still not obtained a computer printout containing a breakdown of the total hours expended to date. In fact, we had to request at the hearing that this document be forwarded to us. Furthermore, at no time have petitioners ever submitted a single document which contains a breakdown of the entirety of the fee request; rather, this information is scattered throughout several documents. Therefore, in order to calculate the amount of time attributable to each attorney and allocable to the fee petition and the litigation on the merits, it has been necessary to cull data from four or five documents. A

similar problem exists with respect to costs. It appears to this Court that, at the very least, an adequately prepared fee petition should contain this kind of information all in one comprehensive document.

Finally, even if we assume that all the documentation actually submitted was "adequate" and "reasonably necessary" to the adjudication of the fee petition, we cannot conceive that the preparation of the documents should have reasonably consumed 164.7 hours. Although we do not have a detailed breakdown of the allocation of these hours, we do know that the preparation of one document, Plaintiff's Reply Memorandum, required 62.8 hours of Faye Cohen and Alan Lerner's time. This document consists of thirty-nine pages, plus several exhibits. The memo itself contains largely factual argument, with little legal discussion. We conclude that an expenditure of 62.8 hours on this one document alone is unreasonable. We cannot help but infer from the circumstances surrounding the preparation of this document that the time spent on other documents was likewise excessive.

Therefore, we will subtract fifty hours from the amount submitted, which hours shall be proportionately subtracted from the totals of each of the three persons involved in preparing the fee petition. A total award of $4,167.00 will be made as compensation for time reasonably necessary to the preparation of this fee petition. We believe that this amount is very generous.[7]

II.

■ Petitioners also request an award of $9,012.69 for costs expended in the litigation at hand. Defendant concedes that petitioners are entitled to costs pursuant to the ADEA, but contests many of the specific requests made by petitioners. Many of

---

6. One example involves the concern raised by defendant that they not be charged in this case with amounts expended in litigation of other, related matters brought against Burroughs. This matter was not mentioned in petitioners' original affidavit, but only in the subsequently submitted reply brief. Burroughs withdrew its objection after petitioners' methods of accounting for their time were explained.

7. We also decline to increase the lodestar for reasons of contingency or quality because, first, we do not believe that we are empowered to do so, *see Baughman, supra,* at 1219, and second, we do not believe that the work done on the fee petition would merit an increase in the lodestar in this case even if one were permitted.

the costs requested are not "costs" as that term is used in 28 U.S.C. § 1921, but are in fact out-of-pocket expenses. Finding no statutory authorization for reimbursement of these expenses,[8] we will deny petitioners' requests with respect to these items, including Lexis fees, telephone charges, travel expenses, and the cost of meals and exhibits.

Also falling within this category is the request for expert witness fees, especially where, as here, none of the experts actually testified at trial. Even where an expert witness does testify at trial, the general rule is that "the compensation paid . . in excess of the statutory per diem fee, mileage and subsistence allowance . . is not taxable" as costs. J. Moore, 6 Federal Practice ¶ 54.77[5.—3]. There have been exceptions made to this rule in cases where the expert's testimony was "helpful to the Court and played an important role in the resolution of the issues." *See, e. g., Commonwealth of Pennsylvania v. O'Neill,* 431 F.Supp. 700, 713 (E.D.Pa.1977), and cases cited therein. However, this exception would not apply where the expert does not testify at trial. Therefore, we will disallow the amount requested by plaintiffs as reimbursement for expert witness fees.

■ Defendant also challenges the taxing as costs of witness fees for those witnesses who did not actually testify at trial. Witness fees are taxable as costs if the witness' testimony is reasonably necessary to the disposition of the case. C. Wright & A. Miller, 10 Federal Practice & Procedure § 2678 (1973). Although it is ordinarily the rule that no fees may be allowed for witnesses who do not testify at trial, this presumption may be overcome if it is shown that their testimony was rendered unnecessary by the occurrence of some extrinsic circumstance. *Id.* We find that, with respect to William Love, plaintiff has made this showing. Mr. Love did not actually testify because a stipulation of counsel made his testimony unnecessary. We conclude that this is the kind of situation where the fee for a non-testifying witness should be permitted, and the fee for Mr. Love will be allowed. The fees for other non-testifying witnesses are not allowed.

■ Finally, defendant requests that the fee for the transcript of Dr. Andrisani's deposition not be allowed as costs. Transcripts of depositions are usually taxable as costs at the court's discretion. C. Wright & A. Miller, 10 Federal Practice & Procedure § 2676 (1973). However, defendants contend that this deposition transcript should not be taxed as costs because of the circumstances surrounding the deposition of Dr. Andrisani as described above. We disagree. We have previously found that Mr. Lerner's conduct in connection with this matter was proper. The deposition of Dr. Andrisani was taken at defendant's request and by order of the court during trial. We conclude, therefore, that the deposition was reasonably necessary to the conduct of this case.

---

8. At the hearing, petitioners argued that the term "costs" as used in the ADEA and similar statutes is not limited to "statutory costs" authorized by 28 U.S.C. § 1921. Rather, the meaning of the term "costs" in the ADEA is closer to "out-of-pocket expenses." Counsel conceded, however, that he could find no authority for his position.

The authorization for attorneys' fees in the ADEA is incorporated by reference from § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b). Our cursory review of the legislative history of the ADEA revealed no clue of the intent of Congress in incorporating § 16(b) with respect to the intended meaning of the term "costs." However, we presume that, by incorporating sections of the FLSA, Congress intended that those sections be interpreted the same for the ADEA as for the FLSA. *See Lorillard v. Pons,* 434 U.S. 575, 580–85, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). Under the FLSA, however, the meaning of the word "costs" has been limited to the items enumerated in 28 U.S.C. § 1921, and not expanded to cover all expenses of litigation. *See, e. g., Clark v. Atlanta Newspapers, Inc.,* 366 F.Supp. 886 (N.D.Ga.1973); *Wyatt v. Holtville Alfalfa Mills, Inc.,* 106 F.Supp. 624 (S.D.Calif.1952).

We further believe that the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), cautions that the expansion of the term "costs" beyond those items statutorily authorized is inappropriate. Although that case dealt directly with the propriety of awarding attorneys' fees as "costs", the thrust of the legislative history recounted in *Alyeska* suggests that specific statutory authorization is needed in order to authorize awards of any item as "costs." *Id.*

Finally, we will allow as costs for preparation of the fee petition an amount of $362.00. This amount compensates petitioners for the transcripts for the depositions taken by defendant, and includes reimbursement for the time incurred by Patrick Kittredge, Esquire during his deposition. The remaining requests for costs will be denied, either because the information provided to us in support of these requests was insufficient [9] or because we do not believe that the expense incurred was reasonably necessary in the pursuit of a reasonable attorney's fee.[10]

In addition, the Dilworth firm has petitioned the court for an award of costs in the amount of $281.19. This award is not opposed by the defendant. We have examined the petition and believe that all of the items requested as costs are appropriate. We therefore, grant this request.

## APPENDIX A

Petitioners' Request for Attorneys' Fees and Costs

1. Litigation on the Merits

| Cohen Firm | Hours | Rate | Total Amount |
|---|---|---|---|
| Alan Lerner | 305.30 | $85–1977 $90–1978 | $ 27,054.00 |
| Faye Cohen | 546.1 | $60 | 32,766.00 |
| Manya Kamerling | 107.5 | $40 | 4,432.00 |
| Patrick Kittredge | .9 | $125 | 112.50 |
| Richard Squire | 2.0 | $90 | 180.00 |
| Jeffrey Pasek | 1.8 | $60 | 108.00 |
| Joseph Donley | .4 | $50 | 20.00 |
| David R. Schwartz | 1.3 | $60 | 78.00 |
| Bruce Thall | 18.2 | $60 | 1,092.00 |
| Andrea Broad | 21.8 | $30 | 654.00 |
| Willard Yates | 36.5 | $25 | 912.50 |
| Ben Slotznick | 77.5 | – – – | 1,356.25 |
| Betty Metz | 7.8 | – – – | 234.00 |
| Christine Councill | 366.1 | $25–1977 $27.50–1978 | 9,715.50 |
| Debra Peters | 15.9 | $27.50 | 437.25 |
| Rebecca Sturchio | 2.5 | $27.50 | 68.75 |
| Mary Cole | 47.9 | $27.50 | 1,317.25 |
| Andrea Smith | 14.6 | – – – | 401.50 |
| | Cohen Proposed Lodestar [1] | | $ 80,939.50 |
| | Multiplied by two | | x   2 |
| | **TOTAL COHEN REQUEST** | | $161,879.00 |

| Dilworth Firm | Hours | Rate | Total Amount |
|---|---|---|---|
| Lawrence Berger | 2.67 | $45–1975 | 120.15 |
| | 41.08 | $50–1976 | 2,054.00 |
| | 5.00 | $75–1978 | 375.00 |
| | Dilworth Proposed Lodestar [2] | | $ 2,549.15 |
| | Multiplied by two | | x   2 |
| | **TOTAL DILWORTH REQUEST** | | $ 5,098.30 |

[1] Calculation is based upon data contained in October 25, 1978 computer printout, less the amounts expended on the fee petition as calculated in note 3, *infra.*

[2] Calculation is based upon Affidavit of Lawrence Berger, dated April 13, 1978.

---

9. Petitioners provided us with no affidavit stating the cost of Dr. Andrisani's fee or the cost of the transcript of the hearing.

10. We believe that the affidavit of Mr. Price was not reasonably necessary to the pursuit of a reasonable fee.

Petitioners' Request for Attorneys' Fees and Costs—Continued

2. Fee Petition

| Cohen Firm | Hours | Rate | Total Amount |
|---|---|---|---|
| Alan Lerner | 47.10 | $90 | $ 4,239.00 |
| Faye Cohen | 52.3 | $60 | 3,138.00 |
| Chris Councill | 18.2 | $27.50 | 500.50 |

| | Total Amount |
|---|---|
| Cohen Proposed Lodestar[3] | $ 7,877.50 |
| Multiplied by 1.5[4] | x 1.5 |
| TOTAL COHEN REQUEST | $ 11,816.25 |

3. Costs on Merits

Cohen Firm

| | Total Amount |
|---|---|
| 1. Copying | $ 1,060.58 |
| 2. Transcripts | 2,890.25 |
| 3. Filing and Service Fees | 428.31 |
| 4. Expert Witnesses | 3,836.50 |
| 5. Long-Distance Telephone Calls | 118.98 |
| 6. Travel Expenses | 553.43 |
| 7. Exhibits, Meals, Miscellaneous | 110.64 |
| 8. LEXIS | 440.00 |
| TOTAL COSTS[5] | $ 9,438.69 |

Dilworth Firm

| | Total Amount |
|---|---|
| TOTAL COSTS REQUESTED[6] | $ 281.19 |

4. Costs of Fee Petition

| | Total Amount |
|---|---|
| 1. Deposition of Patrick Kittredge | $ 250.00 |
| 2. Transcripts of Depositions | 112.50 |
| 3. Fee for Dr. Andrisani | — — — |
| 4. Transcript of Hearing | — — — |
| 5. Fee for Andrew Price | 1,252.60 |
| TOTAL COSTS REQUESTED[7] | $ 1,615.10 |

SUMMARY

1. Total Attorneys' Fees:

| | |
|---|---|
| Cohen Firm | $173,695.25 |
| Dilworth Firm | 5,098.30 |
| TOTAL | $178,793.55 |

2. Total Costs:

| | |
|---|---|
| Cohen Firm | $ 11,053.79 |
| Dilworth Firm | 281.19 |
| TOTAL | $ 11,334.98 |

[3] Calculation is based upon Affidavit of Alan Lerner, dated October 23, 1978, and memorandum of Christine Councill attached thereto.

[4] Multiplier of 1.5 is requested in Plaintiff's Memorandum in Reply to Defendant's Supplemental Memorandum.

[5] Calculation is based upon Affidavit of Alan Lerner, dated April 14, 1978, and Affidavit of Alan Lerner, dated May 11, 1979.

[6] Calculation is based upon Affidavit of Lawrence Berger, dated April 13, 1978.

[7] Calculation is based upon Affidavit of Alan Lerner, dated October 23, 1978; Affidavit of Alan Lerner, dated May 11, 1979; and information provided orally at the hearing.

APPENDIX B

Calculation of Reductions to Petition for Fees and Costs

A. Attorneys' Fees: Litigation on Merits

   1. Cohen Firm

      Reductions to Requested Lodestar                                   $80,939.50

         1. Faye Cohen's hourly rate reduced
            to $50 per hour: (546.1 x 10)       $5,461.00

         2. Non–ADEA Claims:
            Bruce Thall: (10.5 hrs. x $60)
            Alan Lerner: (.7 hrs. x $85)
            Willard Yates: (14.5 hrs. x $25)    $1,052.00

         3. Motion for Sanctions
            Faye Cohen: (11.5 hrs. x $50)      575.00

         4. Slotznick, Metz & Smith        1,991.75

                        LESS                $ 9,079.75

            Lodestar (After Adjustments)         $71,859.75

   2. Dilworth Firm

      Requested Lodestar                                $ 2,549.15

      Reductions to Requested Lodestar
         1. Non–ADEA Claims
            2 hrs. x $50         LESS            $   100.00

                     Lodestar                 $ 2,449.15

B. Attorneys' Fees: Fee Petition

   1. Cohen Firm

      Requested Lodestar                                $ 7,877.50

      Reductions to Lodestar
         1. Faye Cohen's hourly rate reduced
            to $50 per hour: (10 x 52.3)     $  523.00
         2. Less 50 hrs.
            Alan Lerner (less 20 hrs.)
             20 x $90            1,800.00
            Faye Cohen (less 25 hrs.)
             25 x $50            1,250.00
            Chris Councill (less 5 hrs.)
             5 x $27.50         137.50

                   LESS            $ 3,710.50

           Total Attorneys' Fees               $ 4,167.00

C. Costs on Merits:

   1. Cohen Firm

      Amount Requested                               $ 9,438.69

Calculations of Reductions to Petition for Fees and Costs—Continued

Reductions

1. Filing and Service Fees for
   Witnesses who did not testify
   (Nonken, Hargraves, Bastings)       $ 116.60
2. Expert Witnesses                      3,836.50
3. Long-Distance Telephone                118.98
4. Travel Expenses                        553.43
5. Exhibits, Meals, etc.                  110.64
6. LEXIS                                   440.00

                        LESS           $5,176.15

            Total                                      $ 4,262.54

2. Dilworth Firm
   Amount Requested                                    $   281.19
   Reductions          None
                                                       _____
            Total                                      $   281.19

D. Costs on Fee Petition

   1. Cohen Firm
      Amount Requested                                 $ 1,615.10
      Reduction:
         1. Fee for Andrew Price                          1,252.60
                        Total                          $   362.50

SUMMARY

1. Total Attorneys' Fees

         Cohen Firm          $76,026.75
         Dilworth Firm         2,449.15
                             _____
         TOTAL               $78,475.90

2. Total Costs

         Cohen Firm          $ 4,625.04
         Dilworth Firm           281.19
                             _____
         TOTAL               $ 4,906.23