Jay A. ZEFFIRO

v.

FIRST PENNSYLVANIA BANK, N.A.

v.

CAPITAL FIRST CORPORATION, et al.

Harry M. BERNARD, Jr.

v.

FIRST PENNSYLVANIA BANK, N.A.
and Capital First Corporation

v.

CAPITAL FIRST CORPORATION, et al.

Civ. A. Nos. 78–3294, 78–4316.

United States District Court,
E.D. Pennsylvania.

Oct. 27, 1983.

Richard A. Finberg, Michael P. Malakoff, Pittsburgh, Pa., Abraham C. Reich, Philadelphia, Pa., James P. Larkin, Joseph W. Anthony, Minneapolis, Minn., for plaintiffs.

Edward F. Mannino, Mark J. Levin, Philadelphia, Pa., for First Pennsylvania Bank.

Alexander Kerr, Philadelphia, Pa., for Capital First Corp.

Edward M. Dunham, Jr., Philadelphia, Pa., for Philip M. Comerford, Harmon S. Spolan & Spector Cohen Gadon & Rosen.

Neil E. Jokelson, Philadelphia, Pa., for C. Lawrence Rutstein.

Arthur J. Schwab, Pittsburgh, Pa., Christopher K. Walters, Philadelphia, Pa., for Edward E. Cohen.

Richard M. Jordan, Philadelphia, Pa., for Robert C. Arthurs & Babbitt, Meyers & Co.

Barry S. Augenbraun, Barry E. Ungar, Philadelphia, Pa., for Laventhol & Horwath.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This class action suit arises under The Trust Indenture Act of 1939, 15 U.S.C. § 77vvv, and state law. After extensive litigation, *see e.g. Zeffiro v. First Pennsylvania Bank,* 473 F.Supp. 201 (E.D.Pa. 1979), *aff'd,* 623 F.2d 290 (3d Cir.1980), *cert. den.,* 456 U.S. 1005, 102 S.Ct. 2295, 73 L.Ed.2d 1299 (1982), plaintiffs entered into a settlement agreement whereby defendant First Pennsylvania Bank, N.A. agreed to create a settlement fund of $1,050,000.00. The Court granted final approval of the settlement on September 13, 1983. Presently before the Court is plaintiffs' counsel's petition for attorneys' fees and expenses.

■ It is well settled that the award of fees under the equitable or common fund doctrine is proper. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980) (citing cases); *Silberman v. Bogle,* 683 F.2d 62, 64 (3d Cir.1982). The *"Lindy"* analysis provides the appropriate standard against which attorney's fee requests are evaluated. *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) (*Lindy I*); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (en banc) (*Lindy II*). *Lindy I* mandates an initial determination of the number of attorney hours expended, and in what manner, multiplied by a reasonable hourly rate set by the court upon consideration of the attorney's reputation, status, and normal billing

rate. The party seeking the fee has the burden of establishing these components. The resulting figure, known as the "lodestar," may then be adjusted by the court, either upward or downward, based upon its assessment of the contingency of success involved in the suit and the unusual quality of the legal services performed. In *Lindy II*, the Third Circuit set out specific factors to guide the district court's inquiry into the contingency and quality issues. Subsequent decisions have offered further instruction as to proper application of the *Lindy* analysis. *See Walker v. Robbins Hose Co. No. 1, Inc.*, 622 F.2d 692 (3d Cir.1980); *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir. 1978); *Hughes v. Repko*, 578 F.2d 483 (3d Cir.1978); *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir.1978) (*Prandini II*); *Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir. 1977) (*Prandini I*). *See also In Re: Fine Paper Antitrust Litigation*, 98 F.R.D. 48 (E.D.Pa.1983).[1]

Since the fee petition is unopposed and is not in the posture of an adversary proceeding, the Court is mindful of the interests of the class members in its determination of a fee award.

*Number of Hours*

The reasonableness of the number of hours submitted is a question of fact to be determined by the Court. *See Entin v. Barg*, 412 F.Supp. 508 (E.D.Pa.1976). The burden is on counsel to file adequately documented applications for fees detailing the time spent for each task. *Baughman v. Wilson Freight Forwarding Co., supra*, 583 F.2d at 1216. Those who fail to meet that burden do so at their own risk. *Hinckley v. E.I. DuPont De Nemours and Co.*, No. 82–1283 (E.D.Pa. June 30, 1983).

Plaintiffs' attorneys have submitted detailed exhibits in conjunction with their affidavits to support the hours of service claimed. These exhibits consist of contemporaneous time records maintained at each attorney's office and set forth a daily record of time spent. The exhibits and the affidavits, viewed together, give a sufficiently detailed statement as to the nature of the work performed each day to allow a careful review by the Court. The services rendered prior to June 30, 1983, and excluding time spent drafting the fee petition, consumed a total of 3358.55 hours as follows:

| | 1978 | 1979 | 1980 | 1981 | 1982 | 1983 | Total |
|---|---|---|---|---|---|---|---|
| **Attorneys:** | | | | | | | |
| Michael P. Malakoff | 66.50 | 131.70 | 104.00 | 11.05 | 132.50 | 36.50 | 482.25 |
| Richard A. Finberg | 150.75 | 176.30 | 69.00 | 7.00 | 166.85 | 37.45 | 607.35 |
| Louise R. Malakoff | – | 39.40 | 8.75 | – | 2.00 | – | 50.15 |
| Joseph W. Anthony | 210.75 | 327.60 | 53.75 | 2.55 | 489.50 | 67.10 | 1,151.25 |
| James P. Larkin | 1.50 | 1.25 | – | – | 18.00 | – | 20.75 |
| John A. Cotter | – | – | – | – | 474.10 | 119.55 | 593.65 |
| John A. McHugh | – | – | – | – | 10.75 | 1.00 | 11.75 |
| Abraham C. Reich | 25.50 | 131.50 | 20.30 | 3.80 | 53.40 | 9.40 | 243.90 |
| Victor Wright | 1.00 | – | – | – | – | – | 1.00 |
| Michael M. Greenberg | – | – | – | – | 3.90 | – | 3.90 |
| **Legal Assistants:** | | | | | | | |
| John R. McDougall | 9.25 | – | – | – | – | – | 9.25 |
| Joanne Stone | – | 25.75 | – | – | 108.50 | 4.50 | 138.75 |

---

**1.** The recent Supreme Court decision in *Hensley v. Eckerhart*, —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), which discussed the award of attorneys fees in civil rights cases, is not pertinent to this suit since all claims have been settled.

| | 1978 | 1979 | 1980 | 1981 | 1982 | 1983 | Total |
|---|---|---|---|---|---|---|---|
| Paralegals: | | | | | | | |
| Verna Yeso | — | — | — | — | 8.20 | 34.40 | 42.60 |
| Edward Hayes | — | — | 0.80 | — | — | — | 0.80 |
| Dianne Butterworth | — | — | — | — | 1.20 | — | 1.20 |

Upon consideration of the long history of this litigation and after an exhaustive review of the affidavits and exhibits offered in support of this fee petition, the Court finds that the hourly figures set forth above represent time reasonably and necessarily expended in support of plaintiffs' claims. The settlement fund ultimately generated by the work of plaintiffs' counsel was predicated upon the results of extensive litigation over procedural matters, including an interlocutory appeal to the Third Circuit and a writ of certiorari to the United States Supreme Court, and categorically thorough and complete discovery. The case required meticulous analysis of events dating back to May 15, 1972, as a result of a trust indenture agreement entered into by First Pennsylvania Bank on that date. Full understanding of the myriad of issues presented by plaintiffs' suit necessitated many hours of legal research and factual investigation. It has been called to the Court's attention that in preparing their fee petition, counsel exercised "billing judgment" pursuant to the Supreme Court's suggestion in *Hensley, supra,* 103 S.Ct. at 1939–40. Time which, in hindsight, appeared unnecessarily duplicative or of a ministerial nature or otherwise not reasonably necessary to success, was eliminated, as was time spent by professionals and paralegals who had only a minimal involvement with the case. Time necessary to prepare the fee petition and supporting exhibits and affidavits was not claimed.

After reviewing the exhibits, the affidavit of counsel, and the fee petition itself, and upon consideration of counsel's good faith exercise of judgment, the Court concludes, as stated previously, that all of the claimed hours were both reasonably supportive of plaintiffs' claims and reasonably necessary. Compensation for all hours claimed will therefore be allowed.

Counsel also seek an allowance for 20 additional professional hours and 40 additional paralegal hours for time expended from June 30, 1983, in preparation, travel and attendance at the fairness hearing of September 13, 1983, and in administration of the settlement fund. Counsel estimate that $4,000.00 would be appropriate for this additional and future time. The Court finds this request reasonably necessary for the services stated.

*Hourly Rate*

Plaintiffs request an award of fees for 10 attorneys and 4 paralegals as follows:

| | 1978 | 1979 | 1980 | 1981 | 1982 | 1983 |
|---|---|---|---|---|---|---|
| Michael P. Malakoff | $ 80 | $ 95 | $110 | $125 | $140 | $150 |
| Richard A. Finberg | 55 | 70 | 80 | 90 | 110 | 125 |
| Louise R. Malakoff | — | 80 | 95 | 105 | 115 | — |
| Paralegal | — | — | — | — | 35 | 35 |
| Joseph W. Anthony | 58 | 68 | 70 | 85 | 100 | 110 |
| James P. Larkin | 100 | 100 | — | — | 140 | — |
| John A. Cotter | — | — | — | — | 64 | 64 |
| John A. McHugh | — | — | — | — | 105 | 105 |
| Legal Assistant | 20 | 24 | — | — | 35 | 35 |
| Abraham C. Reich | 50 | 60 | 80–95 | 95 | 110* | 110 |
| Victor Wright | 100 | — | — | — | — | — |
| Michael M. Greenberg | — | — | — | — | 55 | — |

| | 1978 | 1979 | 1980 | 1981 | 1982 | 1983 |
|---|---|---|---|---|---|---|
| Paralegal/Law Clerk | | | | | | |
| Edward J. Hayes | – | – | 40 | – | – | – |
| Dianne Butterworth | – | – | – | – | 40 | – |

*Effective April 1, 1982.

■ These rates, it is averred, are those charged to all clients of counsel during the relevant time periods. An attorney's normal hourly billing rate is a logical starting place for valuing an attorney's services—taking account of the attorney's legal reputation and status (partner, associate). *Baughman, supra,* 583 F.2d at 1217; *Lindy I, supra,* 487 F.2d 161.

## Michael P. Malakoff

■ Mr. Malakoff was admitted to practice in 1970 and has been a partner in his current law firm for 11 years. The firm specializes in class actions. Mr. Malakoff has had experience in numerous class actions and his competence has been noted by many courts. *See e.g. Taylor v. Vocational Rehabilitation Center of Allegheny County,* 13 F.E.P. Cases 452, 456 (W.D.Pa. 1976); *Stavrides v. Mellon Bank, N.A.,* 69 F.R.D. 424, 430 (W.D.Pa.1975). Mr. Malakoff is a frequent lecturer on class actions and has been a speaker at class action programs sponsored by the American Bar Association, the Practicing Law Institute, the Pennsylvania Bar Institute, the Allegheny County Bar Association and the New York Academy of Trial Lawyers. In view of his credentials and given the quality of the work performed, the Court concludes that the rates claimed by him are reasonable under all the circumstances of the litigation.

## Richard A. Finberg

Mr. Finberg was admitted to practice in 1973 and has been associated with Mr. Malakoff for 6 years. Mr. Finberg is a graduate of the Massachusetts Institute of Technology (S.D.1970) and the University of Pennsylvania School of Law (J.D.1973). He worked for four years as a law clerk for judges of the United States District Court for the Western District of Pennsylvania. Since 1977 he has spent the bulk of his professional time in class action litigation and was lead counsel in a comparable worth case which resulted in a finding of sex discrimination in pay under Title VII with respect to jobs that were not equal within the meaning of the Equal Pay Act. *Taylor v. Charley Bros. Co.,* 25 F.E.P. Cases 602 (W.D.Pa.1981). The issue of comparable worth has been acknowledged by commentators to be one of the most difficult under Title VII. *See The Comparable Worth Issue,* [Supplement 433, A BNA Special Report], Lab.Rel.Rep. (BNA) (Nov. 7, 1981). The Court finds that the rates requested for Mr. Finberg reflect the quality of his work and are reasonable under all the circumstances of the litigation.

## Louise R. Malakoff

Ms. Malakoff was admitted to practice in 1973 and has been associated with the firm of Berger, Kapetan, Malakoff & Meyers, P.C. since that time. She is a 1973 graduate (cum laude) of the University of Pittsburgh School of Law, where she was a member of the staff of the University of Pittsburgh Law Review and order of the Coif and recipient of the 1973 Phi Alpha Delta award for scholastic achievement. She was a founding member and is a former officer of the Legal Rights of Women Section of the Allegheny County Bar Association, and is a current active member of its Antitrust and Class Action Committee. Ms. Malakoff's law practice has consisted almost exclusively of class action litigation. Her hourly rates are commensurate with her experience in the field of class actions. These rates also reflect the quality of Ms. Malakoff's work, which was essentially devoted to researching and writing the brief in support of class action certification.

Plaintiffs' success in obtaining that certification was undoubtedly instrumental in the plaintiffs' ability to negotiate the present settlement. Under all the circumstances of the litigation, the Court finds that the rates requested by Ms. Malakoff are reasonable.

### Joseph W. Anthony

Mr. Anthony was admitted to practice in 1974 at which time he joined the firm of Larkin, Hoffman, Daly & Lindgren, Ltd. He has been a shareholder in the firm since 1978. Mr. Anthony is a graduate of the University of Connecticut (B.A.1971) and Temple University School of Law (J.D. 1974). Since admission to the bar he has practiced exclusively as a civil trial lawyer. Mr. Anthony first worked on this suit in June, 1978, and has since remained on the suit. As evidenced by the time records and the nature of the tasks he performed, Mr. Anthony undertook responsibility for the bulk of the work involved in plaintiffs' case. That plaintiffs were ultimately successful may be greatly attributed to the work of Mr. Anthony. The Court finds that under all the circumstances of the case, the hourly rates requested for his work reflect its quality, are commensurate with Mr. Anthony's experience as a litigator, and are reasonable.

### James P. Larkin

Mr. Larkin is a shareholder in the law firm of Larkin, Hoffman, Daly & Lindgren, Ltd. He holds a B.A. from St. Thomas College (1951) and a J.D. from the University of Minnesota (1954) where he was on the Law Review. Mr. Larkin has been a member of the bar for over 28 years. As a senior trial attorney, his role in this suit was mainly that of an advisor to Mr. Anthony. Under all the circumstances of the litigation, the Court finds that the established hourly rates for his service are commensurate with his knowledge and experience and are reasonable.

### John A. Cotter

Mr. Cotter was admitted to practice in 1981. He has a Bachelor of Arts Degree from the University of Rochester (magna cum laude, 1976), and a J.D. from the University of Wisconsin Law School (1981), where he was Note and Comment Editor of the Law Review. Mr. Cotter is an associate with Larkin, Hoffman, Daly & Lindgren, Ltd. Mr. Cotter worked closely with Mr. Anthony in preparing the case for trial. In light of his limited experience and recent graduation from law school, the Court finds that the hourly rates requested for Mr. Cotter's services are reasonable under all the circumstances of the litigation.

### John A. McHugh

Mr. McHugh was admitted to practice in 1950 and is a shareholder in the firm of Larkin, Hoffman, Daly & Lindgren, Ltd. He is a graduate of the University of Minnesota (B.S.1943) and the University of Minnesota School of Law (J.D.1950), where he was a member of the Law Review. From 1968 to 1974, Mr. McHugh was President and Chief Executive Officer of the Northwestern National Bank of St. Paul. From 1974 to 1979, he was President and Chief Operating Officer of the Northwestern National Bank of Minneapolis. From 1979 to 1981, he was Vice-Chairman of the Board, Northwestern National Bank of Minneapolis. Mr. McHugh worked on this case as a consultant regarding the financial condition of First Pennsylvania. He advised plaintiffs of the risks both of continued litigation and of an installment settlement. In view of Mr. McHugh's qualifications and experience, and under all the circumstances of the litigation, the Court finds that the hourly rates requested for his services in connection with this case are reasonable.

### Abraham C. Reich

Mr. Reich was admitted to practice in 1974 after graduating from the University of Connecticut (B.A. magna cum laude, 1971) and Temple University School of Law (J.D.1974), where he was an editor of the Temple Law Quarterly. He is currently a partner at Fox, Rothschild, O'Brien & Frankel, having joined the firm upon his graduation from law school. He has authored a number of legal articles, including an article on class actions which was co-authored with Herbert B. Newberg, Esquire,

best known for his work Newberg, *Class Actions* (1977). Mr. Reich served as local counsel to both named plaintiffs in this suit. The hourly rates requested for his services reflect both his experience and the quality of his work. Under all the circumstances of the case, the Court finds that the rates requested are reasonable in relation to the work performed.

### Victor Wright and Michael M. Greenberg

■ Plaintiffs also claim fees for two attorneys, Victor Wright and Michael M. Greenberg, who as members of the firm acting as local counsel together expended 4.90 hours in working on this case. While the record does not provide a basis for the Court to evaluate the professional credentials of either attorney, the Court will nonetheless allow for their services the rates for which they were reimbursed by Larkin, Hoffman, Daly & Lindgren, Ltd.[2] These hourly rates are: Victor Wright—$100/hr; and Michael M. Greenberg—$55/hr.

### Paralegals and Legal Assistants

■ Plaintiffs request fees for the services of five paraprofessionals who worked along with the attorneys in the preparation of this suit. After review of the affidavits and exhibits, the Court finds that the work performed by paralegals and legal assistants was helpful to plaintiffs' case and minimized the unnecessary use of attorney hours in the completion of certain tasks normally performed by attorneys. The rates requested for paraprofessional services are reasonable and reflect the nature and quality of the work performed. Under all the circumstances of the case, the Court will allow compensation at the rates requested.

### Lodestar

Having computed the number of hours and the reasonable hourly rates, the lodestar can be calculated as follows:

2. Plaintiffs' local counsel, Fox, Rothschild, O'Brien & Frankel, has been paid on a guaranteed basis by the Berger and Larkin firms for all

| | |
|---|---|
| Michael P. Malakoff | $ 54,677.75 |
| Richard A. Finberg | 49,817.00 |
| Louise R. Malakoff | 4,213.25 |
| Berger, Kapetan, Malakoff & Meyers, P.C. paralegal | 1,491.00 |
| Joseph W. Anthony | 94,810.55 |
| James P. Larkin | 2,795.00 |
| John A. Cotter | 37,993.60 |
| John A. McHugh | 1,233.75 |
| Larkin, Hoffman, Daly & Lindgren, Ltd. legal assistant | 4,758.00 |
| Abraham C. Reich | 16,058.50 |
| Victor Wright | 100.00 |
| Michael M. Greenberg | 2,245.00 |
| Total ------------ | $270,093.40 |
| Additional and future professional and paralegal time since June 30, 1983 | 4,000.00 |
| GRAND TOTAL ---- | $274,093.40 |

■ In addition, the Court finds that the amount sought for costs and expenses including filing and service fees, photocopying, telephone calls, postage and travel expenses, is reasonable. Thus, $36,038.63 is awarded.

### Adjustment of the Lodestar

Once the lodestar amount is determined, an adjustment may be made on the basis of the quality of the work or the contingent nature of the case. *Lindy I, supra*, 487 F.2d at 167–169; *Lindy II, supra*, 540 F.2d at 117. Plaintiffs' counsel request an upward adjustment by a multiplier of 1.407 based on these factors. In their petition, counsel indicated that a multiplier of 2.0 is more appropriate. However, in conformity with the class notice that fee requests would amount to 40% of the settlement fund, counsel limited themselves to the "minimal" figure of 1.407. This minimal figure still amounts to an increase in the lodestar of about 41% or $109,867.97.

■ After careful consideration of the litigation as a whole, the Court finds that an increment to the lodestar is not warranted. First, adjustments to the lodestar

professional services rendered as well as for the costs and expenses it incurred.

based on quality are appropriate only when exceptional circumstances are present. *Baughman v. Wilson Freight Forwarding Co., supra,* 583 F.2d at 1218–1219; *Lindy II, supra,* 540 F.2d at 118; *Lindy I, supra,* 487 F.2d at 168–169. No such circumstances exist here. The quality of counsels' work generally is reflected in the hourly rate charged. *Silberman v. Bogle,* 683 F.2d 62, 64 (3d Cir.1982); *Wehr v. Burroughs Corp.,* 477 F.Supp. 1012, 1019 (3d Cir.1979). Second, it would be an abuse of this Court's informed discretion to adjust the lodestar for contingency in this class action suit given that the lodestar as set out above is a significant amount in comparison to the total amount of the settlement fund. As the Third Circuit stated in *Lindy I* and reiterated in *Baughman:* "In such circumstances, the court may find that ... the amount found to constitute reasonable compensation for the hours worked was so large a proportion of the total recovery that an increased allowance for the contingent nature of the fee would be minimal." *Baughman, supra,* 583 F.2d at 1218 (quoting *Lindy I, supra,* 487 F.2d at 168).[3] This Court has reviewed counsel's proposed adjustment to the lodestar with the above *Baughman* principle in mind and has accordingly determined not to exercise its discretion to adjust the lodestar. Consideration has been given to counsel's risk of a large expenditure of hours without guarantee of payment in a case where it was initially unknown whether a private cause of action even existed under the statute invoked. Nonetheless, the Court has concluded that stripped to its essentials, the case, although time consuming, was not inordinately complex, and plaintiffs' damages were relatively easy to establish. These factors balance out those which might weigh in favor of an incre-

ment. Accordingly, an adjustment to the lodestar shall not be made.[4]

An appropriate Order will be entered.

---

**3.** In *Baughman,* the plaintiff recovered a total of $90,600.00. In ruling on the petition for attorneys' fees, the district court came up with a lodestar of $32,858.50. It then multiplied the lodestar by a factor of 2 to account for the contingent nature of the case. On appeal, the Third Circuit questioned such a large increase due to contingency, and instructed the trial court to consider the size of plaintiff's award in comparison to the initial lodestar calculation

before awarding an increment based on contingency. *Baughman, supra,* 583 F.2d at 1218.

**4.** The recent Third Circuit decision in *Ursic v. Bethlehem Mines,* 719 F.2d 670 at 676–678 (3d Cir.1983), lends further support to this Court's conclusion that an upward adjustment to the lodestar is not warranted.