**Jay A. ZEFFIRO**

v.

**FIRST PENNSYLVANIA BANK, N.A.**

v.

**CAPITAL FIRST CORPORATION, et al.**

**Harry M. BERNARD, JR.**

v.

**FIRST PENNSYLVANIA BANK, N.A. and Capital First Corporation**

v.

**CAPITAL FIRST CORPORATION, et al.**

**Nos. 78–3294, 78–4316.**

United States District Court, E.D. Pennsylvania.

Dec. 14, 1983.

· Richard A. Finberg, Michael P. Malakoff, Pittsburgh, Pa., Abraham C. Reich, Philadelphia, Pa., Joseph W. Anthony, Minneapolis, Minn., for plaintiffs in both cases.

James P. Larkin, Minneapolis, Minn., for plaintiff in No. 78–4316.

Mark J. Levin, Philadelphia, Pa., for First Pennsylvania Bank in No. 78–3294.

Edward F. Mannino, Philadelphia, Pa., for First Pennsylvania Bank in both cases.

Alexander Kerr, Philadelphia, Pa., for Capital First Corp.

Edward M. Dunham, Jr., Philadelphia, Pa., for Philip M. Comerford, Harmon S. Spolan and Spector Cohen, Gadeon & Rosen.

Neil E. Jokelson, Philadelphia, Pa., for C. Lawrence Rutstein.

Arthur J. Schwab, Pittsburgh, Pa., Christopher K. Walters, Philadelphia, Pa., for Edward E. Cohen.

Richard M. Jordan, Philadelphia, Pa., for Robert C. Arthurs & Babbitt, Meyers & Co.

Barry E. Ungar, Philadelphia, Pa., for Laventhol & Horwath in No. 78–4316.

Barry S. Augenbraun, Philadelphia, Pa., for Laventhol & Horwath in No. 78–3294.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

In *Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045 (2d Cir.1973), the Court of Appeals for the Second Circuit stressed the public interest component of class action litigation in discussing the affirmative duty placed upon class counsel.

> One accepting employment as counsel in a class action does not become a class representative through simple operation of the private enterprise system. Rather, both the class determination and designation of counsel as class representative come through judicial determinations, and the attorney so benefited serves in something of a position of public trust. Consequently, he shares with the court the burden of protecting the class action device against public apprehensions that it encourages strike suits and excessive attorneys' fees.

*Id.* at 1050.

More recently, Judge McGlynn of this district, in a prudent and thoughtful decision, stated that "... a class action is something more than a fee-generating device. It is a cause of action belonging to the members of the class to whom counsel owe a duty of fidelity. Their primary job is to create a fund for the class not the lawyers." *In re Fine Paper Antitrust Litigation*, 98 F.R.D. 48, 84–85 (E.D.Pa.1983).

It is in light of these principles as well as those embodied in the Code of Professional Responsibility, the spirit of which calls for a lawyer to place his loyalty to the client above his personal interests,[1] that the court examines the present motion by counsel to reconsider the amount allowed as a fee in this consolidated class action suit.

## FACTS

Following approval of a settlement agreement which created a fund of $1,050,000 for the benefit of the class, counsel submitted their fee petitions requesting $420,000 plus a 40% share of the interest earned by the settlement fund for the 3358.55 hours of work of 10 attorneys, 2 legal assistants and 3 paralegals. The $420,000 figure consisted of a lodestar of $270,093.40, $36,038.63 in costs and expenses, $4,000.00 for services rendered after June 30, 1983, and an adjustment to the lodestar of $109,867.97. After reviewing the petitions and supporting affidavits and upon retrospective consideration of the litigation as a whole, the court awarded counsel $310,132.03 from the settlement fund. This figure granted counsel full allowance of their submitted hours at the rates they had requested, and provided for complete reimbursement for all claimed costs and expenses. The only way in which the amount awarded differed from the amount requested was in the court's disallowance of any adjustment to the lodestar.

Not satisfied with what they apparently view as half a loaf, counsel's motion asks this court to reconsider its denial of an adjustment. The thrust of counsel's argument is that the $310,132.03 award is inadequate because it did not make them financially whole in the sense that it failed to grant an upward adjustment despite a delay in payment.

## DISCUSSION

The attorneys' approach to their motion is both interesting and unusual. Unfortunately it provides evidence to justify the

---

1. Canon 5 of the Code of Professional Responsibility states that "a lawyer should exercise independent professional judgment on behalf of a client."

Local Rule 14, Rule IV, provides that the Code of Professional Responsibility adopted by the Pennsylvania Supreme Court shall become the standard of conduct for attorneys of this court.

burgeoning criticism that challenges "the altruism of some class action lawyers and charg[es] that the paramount motivation for such litigation [is] counsel's desire to generate substantial fees." *In re Fine Paper Antitrust Litigation, supra,* 98 F.R.D. at 67 (quoting *Kramer v. Scientific Control Corporation,* 534 F.2d 1085 (3d Cir.)), *cert. denied sub nom. Arthur Andersen & Co. v. Kramer,* 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976).

Although the court was somewhat disturbed by certain items contained in counsel's memorandum, initial attention will be given to the delay in payment argument. The attorneys complain that "[t]he *Zeffiro* and *Bernard* class actions were commenced over 5 inflationary years ago in 1978." Petitioners' Motion to Reconsider October 27, 1983 Award at 2, 574 F.Supp. 443. While inflation and the erosion of the dollar during the course of this suit is obviously not to be overlooked, the court perceived that delay in major class action suits such as this one should be of relatively minor importance. The attorneys must recognize that undertakings of this sort involve protracted litigation. Consequently, they must anticipate a long wait for receipt of ultimate compensation, just as in other contingency representations. More importantly, the court would remind counsel that as they alleged throughout the litigation, the class had suffered since 1976, two "inflationary years" longer than counsel. Ultimately, the members of the class will receive only 53% of that to which they are entitled. There is no reason why the inflationary burden should be borne by the class alone for the exclusive benefit of counsel. Moreover, once the settlement was approved, in September 1983, any subsequent delay in payment would have to be considered *de minimis.* The court took pains to issue a prompt decision on the attorneys' fee petitions submitted by counsel. Considering all of the circumstances of the litigation including the class's interest in the time value of its money, the court sees no merit in counsel's motion on this ground.

While it is true that the Third Circuit's *Lindy II* decision, *Lindy Brothers, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 117 (3d Cir.1976) (en banc), directs the district court to consider delay in its determination of whether to adjust the lodestar, counsel misread *Lindy II* if they believe that such an adjustment is required whenever there is some type of delay. *Cf. Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir.1983). Thus this court, while acknowledging *Lindy II* and its progeny and proceeding under their dictates, is not bound to adjust the lodestar and for the reasons expressed above declines to do so. Additionally, the pittance of interest that resulted from the settlement is better reserved for the class than awarded to the attorneys under the circumstances.

It is unfortunate that, due to certain points raised by counsel in their motion, further discussion is warranted. Nonetheless, the court cannot ignore the underlying attitude with which the present motion was apparently filed. The court was both troubled and disturbed upon reading the following:

"Comparing this case and this Court's fee with the *Moore v. Industrial Valley Bank & Trust Company,* Civil Action No. 80–4909 (E.D.Pa.) and the fee award in that case highlights the substantial recovery obtained in this case.

| | Moore | Zeffiro |
|---|---|---|
| Outstanding value of Debentures | $970,000 | $1,375,000 |
| Settlement Fund | $470,000 | $1,050,000 |
| % Recovery | 48% | 76% |
| Delay in Payment | 18 months | 62 months |
| Risk of loss on appeal | No | Yes |
| Award of fees by Court | $77,418[4] | $274,093[5] |
| % of Fee Award to class recovery | 16.5% | 26% |
| Net Recovery to Class (After Costs) | $389,592 | $739,868 |
| Net % recovery to class | 40% | 53% |

As indicated above by a comparison to *Moore* it would appear that the class is receiving *a windfall* at the expense of Petitioners who, by their increased time

expenditures, and success in overcoming the risks inherent in this litigation, succeeded in obtaining a larger class recovery."

Petitioners'' Motion to Reconsider this Court's October 27, 1983 Award at 5–6 (emphasis added).

*The American Heritage Dictionary* (new college ed. 1976), defines "windfall" as "a sudden and unexpected piece of good fortune or personal gain." It is curious that counsel would use this word to describe the percentage proportion of the settlement reserved for the class. As the court views it, the class's recovery was neither sudden nor unexpected. Counsel, however, obviously view it differently. Counsel's contention that the class received a windfall at the attorneys' expense rests upon a comparison of the award in this case to an award made by the Honorable J. William Ditter in a similar case, *Moore v. Industrial Valley Bank and Trust Co.*, No. 80–4909 (E.D.Pa. Oct. 25, 1982). The comparison doesn't appear to support counsel's position. Attorneys' fees in this case amount to nearly four times the fees in the *Moore* case. In percentage terms, the *Moore* attorneys received 16.5% of the settlement in fees, whereas counsel here received 26%. Under the circumstances, counsel's complaints do not muster sympathy. Moreover, counsel's stance is inappropriate in at least two respects. First, the court does not understand the concept that a client, who gets less than that to which he is truly entitled under the law, is somehow receiving a windfall because the attorneys' fees are not higher. Second, counsel imply that they have a right to be awarded no less than what Judge Ditter awarded in *Moore*. Such a misapprehension should be hastily put aside. The court will not engage in the fruitless exercise of citing cases wherein the percentage of fees awarded was considerably lower than that awarded here. The comparisons are not useful and indeed can be misleading. As has been stated in another context when comparisons are sought to be made between different cases and different judges, "it is ... the nature of ... discretionary judgment that the same set of facts may evoke contrary responses—but responses which are nonetheless equally warranted in law—from different judges." *Golden Quality Ice Cream Co. v. Deerfield Specialty*, 87 F.R.D. 53, 55–56 (E.D.Pa.1980).

Another surprising argument is contained in footnote 9 of counsel's motion wherein they contend that "[t]here is a prevailing trend away from class litigation, which many lawyers attribute to the poor economics of class action suits, including the uncertainty of success, the substantial litigation-costs, and the delay in payment. Petitioners' Motion to Reconsider at 9 fn. 9. The court doubts if such a trend, to the extent it exists, is as a result of the failure to award fair and just fees. Attorneys who may be disappointed in their fees or whose expectations may not be met because of the misuse of the class action device, certainly form no part of that trend that is of any concern to this court.

In summary the court will merely reiterate that which the Third Circuit has recently pointed out:

> It should not be necessary to remind the bar that restraint is in its own best interest. The legislative bodies that authorize fees may undertake to limit them as well. In insisting on moderation, the courts do not disserve the bar, but reassure the public that excesses will not be countenanced and, therefore, ill-advised regulatory legislation is unnecessary.

*Ursic v. Bethlehem Mines, supra,* at 678 (footnote omitted).

With this precept in mind, the denial of a lodestar adjustment should not be viewed as a penalty, but rather as an informed discretionary decision that under the circumstances an adjustment was not necessary.

An appropriate Order will be entered.